# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

BASE ACCESS, et. al,

       Plaintiffs,

v.

NATIONAL PARK SERVICE, et. al,

       Defendants.

Case No. 4:25-cv-790

**MOTION TO DISMISS**

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...............................1

III.    CERTIFICATE OF CONFERENCE ......................................................3

IV.     LEGAL STANDARDS .............................................................................3

        A.      Dismissal for lack of subject matter jurisdiction or venue under Rules 12(b)(1) and 12(b)(3) ..................................................................3

        B.      Dismissal for failure to state a claim under Rule 12(b)(6) ...........................4

V.      ARGUMENT .............................................................................................5

        A.      Plaintiffs have failed to adequately plead Article III standing. ....................5

                1.      Plaintiffs have not pleaded an actual or imminent injury in fact. ......6

                2.      Plaintiffs have not established a substantial likelihood that their alleged injuries will be redressed. ......................................................8

        B.      The Complaint should be dismissed or transferred under Rule 12(b)(3) for improper venue. ......................................................................10

        C.      Counts One and Two fail to state a claim under Rule 12(b)(6) .................. 11

                1.      Plaintiffs' Non-Delegation challenge (Count One) fails because the Organic Act provides an intelligible principle for NPS to follow when regulating activities within the National Park System. ........................................................................................ 11

                2.      Count Two fails because neither the Organic Act nor the Aerial Delivery Rule is impermissibly vague. ..........................................15

VI.     CONCLUSION ........................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Ambraco, Inc. v. Bossclip B.V.*,
570 F.3d 233 (5th Cir. 2009) ................................................................................4

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49 (2013) ...............................................................................................4

*Big Time Vapes, Inc. v. FDA*,
963 F.3d 436 (5th Cir. 2020) ..............................................................................12

*Blackburn v. City of Marshall*,
42 F.3d 925 (5th Cir. 1995) ..................................................................................4

*Bustos v. Martini Club, Inc.*,
599 F.3d 458 (5th Cir. 2010) ................................................................................4

*Camfield v. United States*,
167 U.S. 518 (1897) ..............................................................................................9

*Caver v. Cent. Ala. Elec. Coop.*,
2015 WL 5286501 (S.D. Ala. Sept. 8, 2015) .......................................................4

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..............................................................................................6

*Clark v. Cmty. for Creative Non-Violence*,
468 U.S. 288 (1984) ..............................................................................................9

*Connally v. General Constr. Co.*,
269 U.S. 385 (1926) ............................................................................................15

*Deutsch v. Travis Cnty. Shoe Hosp., Inc.*,
721 F. App'x 336 (5th Cir. 2018) .........................................................................6

*El Paso Cnty., Tex. v. Trump*,
982 F.3d 332 (5th Cir. 2020) ................................................................................8

*Fontenot v. McCraw*,
777 F.3d 741 (5th Cir. 2015) ................................................................................6

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
695 F.3d 330 (5th Cir. 2012) ................................................................................7

*J. W. Hampton, Jr., & Co. v. United States*,
276 U.S. 394 (1928) ............................................................................................11

*Jarkesy v. SEC*,
    34 F.4th 446 (5th Cir. 2022) ............................................................................ 13

*Johnson v. United States*,
    576 U.S. 591 (2015) ........................................................................................ 15

*Kisor v. Wilkie*,
    588 U.S. 558 (2019) ........................................................................................ 17

*Lane v. Halliburton*,
    529 F.3d 548 (5th Cir. 2008) ............................................................................ 3

*Logan v. Marker Grp., Inc.*,
    No. 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) ............................ 4

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
    594 F.3d 383 (5th Cir. 2010) ........................................................................ 2, 4

*Louisiana v. Biden*,
    64 F.4th 674 (5th Cir. 2023) ............................................................................ 6

*Lujan v. Defs. of Wildlife*, 504,
    U.S. 555 (1992) .............................................................................................. 6

*MacPhail v. Oceaneering Int'l, Inc.*,
    170 F. Supp. 2d 718 (S.D. Tex. 2001) ................................................................ 4

*Malik v. U.S. Dept. of Homeland Sec.*,
    619 F.Supp.3d 652 (N.D. Tex. 2022) .................................................................. 7

*Mistretta v. United States*,
    488 U.S. 361 (1989) .................................................................................. 11, 12

*Noem v. Haaland*,
    41 F.4th 1013 (8th Cir. 2022) ........................................................................ 8, 9

*Noem v. Haaland*,
    542 F. Supp. 3d 898 (D.S.D. 2021) .................................................................. 14

*Patterson v. Rawlings*,
    287 F. Supp. 3d 632 (N.D. Tex. 2018) ................................................................ 3

*Paxton v. Restaino*,
    683 F. Supp. 3d 565 (N.D. Tex. 2023) ................................................................ 7

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*,
    45 F.4th 816 (5th Cir. 2022) ............................................................................ 6

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001) ............................................................................ 3

*SEC v. Jarkesy*,
603 U.S. 109 (2024)..................................................................................13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)................................................................................5, 6

*Stewart v. Cooley*,
648 F. Supp. 3d 772 (W.D. La. 2022) ........................................................3

*Stockman v. Fed. Election Comm'n*,
138 F.3d 144 (5th Cir. 1998)......................................................................3

*Tenth St. Residential Ass'n v. City of Dallas, Tex.*,
968 F.3d 492 (5th Cir. 2020)......................................................................8

*Tex. State LULAC v. Elfant*,
52 F.4th 248 (5th Cir. 2022).......................................................................6

*United States v. Albers*,
226 F.3d 989 (9th Cir. 2000).....................................................................17

*United States v. Brown*,
364 F.3d 1266 (11th Cir. 2004)...........................................................13, 14

*United States v. Davis*,
588 U.S. 445 (2019)...................................................................................15

*United States v. Grace*,
778 F.2d 818 (D.C. Cir. 1985) ..................................................................12

*United States v. Grimaud*,
220 U.S. 506 (1911)............................................................................11, 15

*United States v. Nieves*,
2019 WL 1315940 (S.D.N.Y. Mar. 22, 2019)..........................................14

*United States v. Oxx*,
127 F.3d 1277 (10th Cir. 1997).................................................................17

*United States v. Pheasant*,
129 F.4th 576 (9th Cir. 2025)..............................................................14, 15

*United States v. Yazzie*,
2023 WL 4887562 (D. Nev. Aug. 1, 2023)...............................................14

*Warth v. Seldin*,
422 U.S. 490 (1975)....................................................................................6

*Wash. State Grange v. Wash. State Republican Party*,
552 U.S. 442 (2008)...................................................................................16

*Whitman v. Am. Trucking Ass'n,*
   531 U.S. 457 (2001) ............................................................................... 12

**Statutes**

18 U.S.C. § 1865 ................................................................................. 2, 12

18 U.S.C. § 1865(a) ................................................................... 5, 12, 15, 16

28 U.S.C. § 1391(e)(1) ............................................................................ 10

28 U.S.C. § 1406(a) .............................................................................. 3, 4

28 U.S.C.A. § 1391(c)(2) ......................................................................... 10

54 U.S.C. § 100101(a) ....................................................................... 12, 13

54 U.S.C. § 100501 ............................................................................... 13

54 U.S.C. § 100751(a) .................................................................... 12,13, 16

**Regulations**

36 C.F.R. § 2.17(a)(3) .......................................................................... 2, 16

**Other Authorities**

Exec. Order No. 14294 § 2(b), 90 Fed. Reg. 20363 (May 14, 2025)................................. 2

**Constitutional Provisions**

U.S. Const. Art, I, § 1 ............................................................................. 11

## I.    INTRODUCTION

The 109-year-old National Park Service ("NPS") Organic Act is the most important statutory directive for NPS.  The Organic Act, and the regulations promulgated pursuant to the Act, guide NPS's management of 433 individual units, including 63 national parks.  Plaintiffs—BASE jumping enthusiasts—ask the Court to declare that the Organic Act is unconstitutional and that NPS has no authority to use criminal sanctions to deter and punish unlawful conduct within the National Park System.  Such a ruling would eliminate NPS's ability to penalize not just BASE jumping, but *any* potentially harmful conduct, such as cutting down a giant sequoia in Yosemite, dumping trash into Old Faithful in Yellowstone, or defacing petroglyphs in Canyonlands.

The Court should reject Plaintiffs' unsupported allegations and dismiss the complaint on multiple bases.  First, Plaintiffs fail to establish subject matter jurisdiction because they lack standing.  Second, venue is improper in this district.  Finally, even if Plaintiffs satisfy these threshold requirements, Counts One and Two fail to state a claim because the Organic Act and Aerial Delivery Rule are constitutional, and NPS has the authority to promulgate regulations for the use and management of national parks.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

BASE jumping is an extreme sport where a person jumps off a cliff or structure, then deploys a parachute to control the descent. Compl. ¶ 50, ECF No. 1. The activity is legal in national parks with a permit, but NPS has rarely issued permits for this activity. *Id.* ¶¶ 69, 114.  In 2024, NPS issued a memorandum restating guidance that permits may not be issued until individual park units complete a planning process that determines

whether the activity is appropriate at that unit. *See* Feb. 8, 2024 Guidance Memo at 2-3, attached as Ex. A.[1]  Park superintendents, considering their many other responsibilities and priorities, have discretion whether and when to undertake the planning process. *Id.* at 2.

Plaintiffs, six individuals and one organization, are dissatisfied with NPS's management of BASE jumping within national parks. *See* Compl., ¶¶ 2, 14–23.  In an effort to "legally" or "lawfully" BASE jump in national parks, *id.* ¶¶ 14-23, Plaintiffs seek far-reaching relief.  They argue that the Organic Act unconstitutionally delegates authority to NPS and, in conjunction with the criminal sanctions described in 18 U.S.C. § 1865,[2] is unconstitutionally vague because it fails to provide people of "common intelligence" with fair notice of what conduct and activities are criminal in national park units. *Id.* at ¶¶ 145, 146.  Plaintiffs also assert that NPS's 60-year-old Aerial Delivery Rule, 36 C.F.R. § 2.17(a)(3)—which proscribes "[d]elivering or retrieving a person or object by parachute, helicopter, or other airborne means, except . . . pursuant to the terms and conditions of a permit"—is unconstitutionally vague as applied to BASE jumping. *Id.*  And, finally, they claim that NPS's construction and application of the Aerial

---

[1] The Guidance Memo is quoted in Paragraphs ¶¶ 104-109 of the complaint and therefore may be considered. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (observing that courts may consider "any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint").

[2] Pursuant to a recent Executive Order, "[p]rosecution of criminal regulatory offenses is most appropriate for persons who know or can be presumed to know what is prohibited or required by the regulation and willingly choose not to comply, thereby causing or risking substantial public harm." Exec. Order No. 14294 § 2(b), 90 Fed. Reg. 20363 (May 14, 2025).

Delivery Rule, as applied to BASE jumping, is arbitrary and capricious in violation of the

Administrative Procedure Act. *Id.* at ¶¶ 150–171.

## III.    CERTIFICATE OF CONFERENCE

Defendants' counsel conferred in good faith with Plaintiffs' counsel on June 6 and

June 10 regarding this motion.

## IV.    LEGAL STANDARDS

### A.    Dismissal for lack of subject matter jurisdiction or venue under Rules 12(b)(1) and 12(b)(3)

"Federal courts are courts of limited jurisdiction," *Stockman v. Fed. Election

Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998), and the burden of establishing subject matter

jurisdiction "is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d

158, 161 (5th Cir. 2001).  Challenges to standing are properly brought under

Rule 12(b)(1) and can be facial or factual in nature. *Patterson v. Rawlings*, 287 F. Supp.

3d 632, 637-38 (N.D. Tex. 2018).  In ruling on a Rule 12(b)(1) motion, the court may

consider the complaint alone, the complaint plus undisputed facts, or the complaint,

undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529

F.3d 548, 557 (5th Cir. 2008).  To defeat the motion, a party cannot "rest merely on

unsupported conclusions or interpretations of law" or "conclusory descriptions of a

general scenario which could be dominated by unpleaded facts." *Stewart v. Cooley*, 648

F. Supp. 3d 772, 776 (W.D. La. 2022) (citations omitted).

Whether venue is improper under Rule 12(b)(3) and 28 U.S.C. § 1406(a) "depends

exclusively on whether the court in which the case was brought satisfies the requirements

of federal venue laws." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55–56 (2013). As with Rule 12(b)(1), a court may look at the complaint alone or consider additional facts to resolve a motion under Rule 12(b)(3). *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). If the court finds that venue is improper, it must either dismiss the case or transfer it to a proper venue under 28 U.S.C. § 1406(a). *MacPhail v. Oceaneering Int'l, Inc.*, 170 F. Supp. 2d 718, 720 (S.D. Tex. 2001).

### B.    Dismissal for failure to state a claim under Rule 12(b)(6)

Dismissal under Rule 12(b)(6) "is appropriate where the plaintiff fails to allege 'enough facts to state a claim to relief that is plausible on its face' and thus does not 'raise a right to relief above the speculative level.'" *Logan v. Marker Grp., Inc.*, No. 4:22-CV-00174, 2024 WL 3489208, at *3 (S.D. Tex. July 18, 2024) (citation omitted). Rule 12(b)(6) motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). But "legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quotation omitted). Only claims that are both legally cognizable and plausible survive Rule 12(b)(6). *Lone Star Fund V (U.S.), L.P.*, 594 F.3d at 387 (5th Cir. 2010)); *see also Caver v. Cent. Ala. Elec. Coop.*, 2015 WL 5286501, at *2 (S.D. Ala. Sept. 8, 2015), *aff'd*, 845 F.3d 1135 (11th Cir. 2017) (observing that "pure question[s] of law," including matters of statutory interpretation, may be resolved on a motion to dismiss).

V.    **ARGUMENT**

The Court should dismiss Plaintiffs' claims on several threshold bases.  First, based on the face of the complaint, none of the Plaintiffs have demonstrated that they meet the injury or redressability requirements for Article III standing, so dismissal is warranted under Rule 12(b)(1).  Second, the Southern District of Texas is an improper venue because the only Plaintiff who resides there—Mr. Cowser—lacks standing.

Even if the Court finds that Plaintiffs have satisfied these threshold requirements, the Court should nonetheless dismiss Counts One and Two under Rule 12(b)(6). Plaintiffs' non-delegation claim (Count One) fails as a matter of law because, as numerous courts have held, Congress articulated an intelligible principle in the Organic Act that allows NPS to regulate behavior within the National Park System.  Plaintiffs' vagueness challenge to the Organic Act, the criminal sanction provision in 18 U.S.C. § 1865(a), and the Aerial Delivery Rule (Count Two) likewise fails as a matter of law, because the statutes and regulation provide a person of common intelligence with fair notice that NPS prohibits BASE jumping without a permit under the regulation.

### A.    Plaintiffs have failed to adequately plead Article III standing.

The Court should dismiss Plaintiffs' claims under Rule 12(b)(1) because Plaintiffs have not alleged sufficient facts to establish that they face an imminent, concrete injury or that there is a substantial likelihood that any such injury would be redressed by their requested relief.  To demonstrate standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S.

330, 338 (2016).  Plaintiff has the burden of establishing all three elements for every claim.  *Id.*; *see also Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 821 (5th Cir. 2022).  When the case is at the pleading stage, as here, the plaintiff must "'clearly . . . allege facts demonstrating' each element."  *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).  "An association may have standing either by showing it can sue on behalf of its members ('associational' standing') or sue in its own right ('organizational' standing')."  *Tex. State LULAC v. Elfant*, 52 F.4th 248, 253 (5th Cir. 2022) (citations omitted).  The court must evaluate each plaintiff's Article III standing for each claim because "standing is not dispensed in gross."  *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015).

### 1.  Plaintiffs have not pleaded an actual or imminent injury in fact.

To establish an injury in fact, Plaintiffs must show they suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  If the alleged injuries are forward-looking, the plaintiff must show "a material risk of future harm" that is "sufficiently imminent and substantial."  *Perez*, 45 F.4th at 827 (citation omitted).  The injury must be "*certainly* impending," and "allegations of *possible* future injury" fail to establish standing.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up); *see also Louisiana v. Biden*, 64 F.4th 674, 681 (5th Cir. 2023*)*.  The injury-in-fact requirement weeds out cases that rest on "some day" intentions—where there is no "description of concrete

plans" or "*when*" the alleged injury might occur. *Lujan*, 504 U.S. at 564; *see also Deutsch v. Travis Cnty. Shoe Hosp., Inc.*, 721 F. App'x 336, 340 (5th Cir. 2018) (same).

Plaintiffs' alleged injuries are, at best, of the "some day" variety. None allege concrete plans to BASE jump in a national park, only that they "seek[] to lawfully BASE jump in the national parks." Compl. ¶¶ 15–16, 18, 20–21, 23; *see also id.* at ¶ 14 (alleging that BASE Access's members "actively seek to legally BASE jump in national parks"). This type of amorphous allegation provides no details about when, where, or how Plaintiffs will seek to BASE jump in a particular national park. *See Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 343 (5th Cir. 2012) (holding plaintiffs lack standing to assert anti-competitive cause of action when they did not cite any evidence or plan to purchase a casket for themselves, a friend, or a family member). A desire to do something in the future, untethered to any concrete plan, does not confer Article III standing.

Three individual Plaintiffs have alleged prior arrests for illegally BASE jumping in national parks, *see* Compl. ¶¶ 18, 20, 23, but retrospective allegations "do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy." *Malik v. U.S. Dept. of Homeland Sec.*, 619 F.Supp.3d 652, 657-58 (N.D. Tex. 2022) (citation omitted). Here, none of the Plaintiffs have alleged any imminent, concrete plans to BASE jump in a specific national park unit at some specified point in the future. So Plaintiffs have not "demonstrate[d] a realistic danger of sustaining a direct injury [from the regulation's] enforcement" and therefore cannot bring a pre-

enforcement challenge. *Paxton v. Restaino*, 683 F. Supp. 3d 565, 569 (N.D. Tex. 2023) (citation omitted).

Organizational standing requires an association to show that its ability to pursue its mission is "perceptibly impaired" because it "'diverted significant resources to counteract the defendant's conduct.'" *Tenth St. Residential Ass'n v. City of Dallas, Tex.*, 968 F.3d 492, 500 (5th Cir. 2020) (citation omitted). Because BASE Access has not alleged the injury requirements for organizational standing, *see* Compl. ¶ 14, it can only sue if one of its individual members has standing. As discussed above, none of its members have established the required injury in fact.

In sum, Plaintiffs have not established a concrete, imminent injury in fact and their claims should be dismissed pursuant to Rule 12(b)(1).

### 2. Plaintiffs have not established a substantial likelihood that their alleged injuries will be redressed.

To establish redressability, a plaintiff must show "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *El Paso Cnty., Tex. v. Trump*, 982 F.3d 332, 341 (5th Cir. 2020) (citation omitted). Plaintiffs have not shown how their requested relief—an order declaring the Organic Act and the Aerial Delivery Rule unlawful and enjoining criminal penalization of BASE Jumping under the Rule—will allow them to lawfully BASE jump in national parks.

Based on similar facts, the Eighth Circuit recently dismissed South Dakota's non-delegation challenge to the Organic Act. *Noem v. Haaland*, 41 F.4th 1013, 1017–18 (8th Cir. 2022). The Eighth Circuit held that South Dakota could not "identify how the

'requested relief will redress [its] alleged injury,' which is not being able to hold a Fourth of July fireworks show at Mount Rushmore." *Id.* (alteration in original).  The court explained that cases involving the Organic Act are different from ones in which "an agency is already regulating the party who sues" and a favorable decision would "remove the obstacle" preventing the plaintiff from acting.  *Id.* at 1017.  As the court explained, "[n]obody has a right to shoot off fireworks on someone else's land, whether it be a neighbor; an area business; or as is the case here, a national park."  *Id.* at 1018.  If the court declared the Organic Act unconstitutional, NPS would have no way to grant "permission" for South Dakota to hold a fireworks show, which would "only make it *harder*, not easier, for South Dakota to remedy its claimed injury." *Id.*

The same reasoning applies in this case. The Supreme Court has recognized that the Federal government has "the rights of an ordinary proprietor" to exclude people from its own lands or limit their use of those lands, *see Camfield v. United States*, 167 U.S. 518, 524 (1897), and that the NPS "is charged with responsibility for the management and maintenance of the National Parks and is authorized to promulgate rules and regulations" for their use. *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 289 (1984).  Invalidating the Organic Act or vacating the Aerial Delivery Rule will not make BASE jumping lawful in national parks, but rather will "only make it *harder*" for Plaintiffs to "remedy [their] claimed injury" by removing the option for obtaining a permit under the Aerial Delivery Rule.  *See Noem*, 41 F.4th at 1018.  The Court should dismiss the complaint under Rule 12(b)(1) because none of the Plaintiffs have established

a substantial likelihood that their requested relief will allow them to BASE jump lawfully in national parks.

### B.   The Complaint should be dismissed or transferred under Rule 12(b)(3) for improper venue.

Plaintiffs assert venue based solely on the residency of one Plaintiff, Mr. Cowser. Therefore, should the Court find that some of the other Plaintiffs have standing while Mr. Cowser does not, this case must be dismissed or transferred. Under 28 U.S.C. § 1391(e)(1), when a defendant is the United States or agency thereof, venue is proper where:

> (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action.

Here, because Defendants reside in D.C. and there are no relevant national park units located in this District, Plaintiffs invoke § 1391(e)(1)(C) as their sole basis for venue. Compl. ¶ 12. Plaintiffs thus rely exclusively on Mr. Cowser, as he is the only Plaintiff who resides in this District. Compl. ¶ 15. While Plaintiffs allege that "at least one" of BASE Access's members resides in this District, Compl. ¶ 14, this is insufficient to establish residency for an unincorporated entity under 28 U.S.C.A. § 1391(c)(2). So, because Mr. Crowser does not have standing, *see supra* at 5-9, and because Plaintiffs have made no other allegations that would support venue under 28 U.S.C. § 1391(e)(1), venue is improper, and dismissal or transfer is appropriate under Rule 12(b)(3).

If the Court transfers the case, it should be to the District of D.C., where Defendants reside, or to the Eastern District of California, where Yosemite National Park

is located and where a substantial part of the events that give rise to this action allegedly

occurred.  *See* Compl. ¶¶ 18, 20, 57–65, 97–103, 110–114.

### C.  Counts One and Two fail to state a claim under Rule 12(b)(6).

#### 1.  Plaintiffs' Non-Delegation challenge (Count One) fails because the Organic Act provides an intelligible principle for NPS to follow when regulating activities within the National Park System.

Plaintiffs present a sweeping challenge to NPS's Organic Act, arguing that

Congress impermissibly delegated its legislative authority to the Executive Branch by

allowing NPS to promulgate regulations that prohibit certain activities within the national

parks, and prescribing criminal sanctions for violating those regulations.  But over a

century ago the Supreme Court rejected this same argument, in the context of a federal

land management statute like the Organic Act. *See United States v. Grimaud*, 220 U.S.

506, 521-23 (1911).  Indeed, the Court has long recognized that "Congress simply cannot

do its job absent an ability to delegate power under broad general directives."  *Mistretta v.*

*United States*, 488 U.S. 361, 372 (1989).

Plaintiffs' non-delegation argument is rooted in Article I of the Constitution, which

provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the

United States." U.S. Const. Art, I, § 1.  Consistent with that Legislative Vesting Clause,

Congress may "obtain[ ] the assistance of its coordinate Branches" when it "lay[s] down

by legislative act an *intelligible principle* to which the person or body authorized to

[exercise the delegated authority] is directed to conform." *Mistretta*, 488 U.S. at 372

(quoting *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928)) (alteration

in original) (emphasis added).  This standard is "not demanding," *see Big Time Vapes,*

*Inc. v. FDA*, 963 F.3d 436, 442 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2746 (2021), and,

in its long history, the Supreme Court has found the requisite "intelligible principle"

lacking in only two statutes," both in 1935. *Whitman v. Am. Trucking Ass'n*, 531 U.S.

457, 474, 488 n.2 (2001).

To satisfy the "intelligible principle" standard, Congress must "clearly delineate[]

[1] the general policy, [2] the public agency which is to apply it, and [3] the boundaries of

this delegated authority." *Mistretta*, 488 U.S. at 372-73.  Here, the Organic Act and

18 U.S.C. § 1865(a) supply the requisite "intelligible principle."  The Organic Act,

originally enacted in 1916, states:

> The Secretary, acting through the Director of the National Park Service,
> shall promote and regulate the use of the National Park System by means
> and measures that conform to the fundamental purpose of the System units,
> which [] is to conserve the scenery, natural and historic objects, and wild
> life in the System units and to provide for the enjoyment of the scenery,
> natural and historic objects, and wild life in such manner and by such
> means as will leave them unimpaired for the enjoyment of future
> generations.

54 U.S.C. § 100101(a).  Through the Act, Congress gave the Secretary, acting through

NPS, the authority to "prescribe such regulations as the Secretary considers necessary or

proper for the use and management of System units."  *Id*. § 100751(a).  Congress also

expressly imposed criminal penalties for violating these regulations. 18 U.S.C. § 1865;

*see also United States v. Grace,* 778 F.2d 818, 822-23 (D.C. Cir. 1985) (rejecting

separation of powers argument; "[i]t is not the Park Service but the Congress that has criminalized violations of the Park Service regulations.").

Contrary to Plaintiffs' allegations, *see* Compl. ¶¶ 131-132, the statutory provisions mentioned above provide a sufficiently "intelligible principle."  The Organic Act's clear objective is to "conserve" the National Park System's scenery, objects, and wildlife, and to "provide for the [public's] enjoyment" of those resources so as to "leave them unimpaired" for future generations. 54 U.S.C. § 100101(a).  Congress has expressly conferred authority upon the Secretary, acting through NPS, and delineated the boundaries of that authority—both geographically, by defining the "National Park System" to which the authority applies, *see* 54 U.S.C. § 100501, and programmatically, by requiring management actions to "conform to the fundamental purpose" defined by the statute, *id*. at § 100101(a), and limiting regulations to those the Secretary considers "necessary or proper for the use and management" of the System's lands. *Id*. at § 100751(a).  This is not a statutory scheme where there is a "total absence of guidance." *See Jarkesy v. SEC,* 34 F.4th 446, 462 (5th Cir. 2022) (holding that Congress violated the nondelegation doctrine when it granted the SEC "exclusive authority and absolute discretion" to decide whether to bring enforcement actions in federal courts or administratively), *aff'd on other grounds sub nom., SEC v. Jarkesy*, 603 U.S. 109 (2024).

The Eleventh Circuit has examined the Organic Act for its constitutionality and rejected a nondelegation challenge.  In *United States v. Brown*, 364 F.3d 1266, 1271-72 (11th Cir. 2004), a criminal defendant raised a nondelegation challenge to his convictions for violating NPS's traffic regulations within a national seashore.  *Id.* at 1268.  The

Eleventh Circuit rejected the defendant's argument and upheld his convictions.  It held that Congress had clearly identified NPS as the public agency responsible for conserving "the scenery and the natural and historic objects and the wild life" within the national parks and providing "the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations." *Id.* at 1272.  It further held that Congress had limited NPS's regulatory authority to ensuring the success of that clearly delineated mission.  *Id.* at 1272–73.[3]

Similarly, the underlying district court decision in *Noem* denied South Dakota's request for an injunction in its challenge to the constitutionality of the Organic Act, holding that it was unlikely to succeed in claiming that NPS lacked the authority to regulate the use of fireworks in national parks, because the Organic Act provides the requisite intelligible principle. *Noem v. Haaland*, 542 F. Supp. 3d 898, 916-18 (D.S.D. 2021).  Other courts have rejected similar challenges to the Organic Act.  *See, e.g.*, *United States v. Yazzie*, 2023 WL 4887562, at *2 (D. Nev. Aug. 1, 2023); *United States v. Nieves*, 2019 WL 1315940, at *2 (S.D.N.Y. Mar. 22, 2019).

Finally, earlier this year, the Ninth Circuit rejected a non-delegation challenge to the Secretary of the Interior's authority to promulgate regulations enforceable through criminal sanctions under an analogous statute, the Federal Land Policy and Management Act ("FLPMA").  *United States v. Pheasant*, 129 F.4th 576, 581-583 (9th Cir. 2025).  The court held that FLPMA's directive to "issue regulations necessary to implement the

---

[3] When *Brown* was decided, the Organic Act was organized in a different section of the U.S. Code.  It has since been restated and codified into positive law.

provisions of [the FLPMA] with respect to the management, use, and protection of the

public lands," together with other provisions, provided "clear" guidance and "constraints"

that satisfied Article I.  *Id.* at 580–81 (citing *Grimaud*, 220 U.S. at 514) (alteration in

original).

Here, because the Organic Act authorizes the Secretary of the Interior to regulate

the use and management of the National Park System for the Act's conservation and

resource-protection purposes, the Organic Act is not an unconstitutional delegation of

legislative authority.  Count One should be dismissed as a matter of law.

> **2.     Count Two fails because neither the Organic Act nor the Aerial Delivery Rule is impermissibly vague.**

Plaintiffs also argue that the Organic Act, in conjunction with 18 U.S.C. § 1865(a),

is impermissibly vague on its face "because it fails to define what conduct is criminal."

Compl. ¶ 145.  And they challenge the Aerial Delivery Rule as applied to BASE jumping,

contending that the word "deliver" is confusing in this context.  *Id.* at ¶¶ 146, 148.  These

arguments, like the non-delegation arguments, fail as a matter of law.

"The Fifth Amendment provides that no person shall . . . be deprived of life,

liberty, or property, without due process of law."  *Johnson v. United States*, 576 U.S. 591,

595 (2015) (cleaned up).  "Vague laws contravene the 'first essential of due process of

law' that statutes must give people 'of common intelligence' fair notice of what the law

demands of them."  *United States v. Davis*, 588 U.S. 445, 451 (2019) (quoting *Connally

v. General Constr. Co.*, 269 U.S. 385, 391 (1926)).  A statute is vague on its face, if "no

set of circumstances exists under which the Act would be valid." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008).

Neither the Organic Act nor the Aerial Delivery Rule is unconstitutionally vague under this standard.  First, Plaintiffs' facial vagueness challenge to the Organic Act and 18 U.S.C. § 1865(a), *see* Compl. ¶ 145, does not establish: (1) that a person of common intelligence would not be on fair notice of what the law demands of them, or (2) that NPS's Organic Act and 18 U.S.C. § 1865(a) could never be valid under any circumstances.  As noted above, the Organic Act expressly confers on the Secretary of the Interior, acting through NPS, the authority to promulgate regulations governing behavior and activities within the National Park System. 54 U.S.C. § 100751(a).  In turn, 18 U.S.C. § 1865(a) informs the public that you must look to those regulations and obey them or face criminal consequences.  These statutes present no mystery.  Anyone of common intelligence would know that these statutes allow NPS to regulate behavior within the national parks, which it has done for over a century, and that running afoul of those regulations could result in fines, imprisonment, or both. 18 U.S.C. § 1865(a).

Second, Plaintiffs are also incorrect that a person of common intelligence would not understand that the Aerial Delivery Rule applies to BASE jumping.  The Rule prohibits "[d]elivering or retrieving a person or object by parachute, helicopter, or other airborne means," without a permit. 36 C.F.R. § 2.17(a)(3).  Plaintiffs appear to concede that BASE jumping involves *moving* "a person . . . by parachute," *see* Compl. ¶ 50, but allege that the Rule is confusing because the word "deliver" is not ordinarily used to describe a person jumping from one place to another.  *See id*. at ¶ 146.  But the Ninth and

Tenth Circuits have rejected Plaintiffs' exact argument that the term "delivery" renders the Rule unconstitutionally vague as applied to BASE jumping. *United States v. Albers*, 226 F.3d 989, 994 (9th Cir. 2000) ("We decline to define the term [delivery] to exempt self-delivery."); *United States v. Oxx*, 127 F.3d 1277, 1279 (10th Cir. 1997) ("'Delivering' is not defined in the regulations, but we believe it is apparent that moving oneself from one area to another, as defendants did, constitutes delivery. As applied to [BASE jumping], then, 'delivering' is unambiguous."). Because the regulation can easily be applied to BASE jumping, the regulation makes "it reasonably clear . . . that the [] conduct [i]s criminal." *See id*.

Moreover, NPS has, for over four decades (Compl. ¶ 68), regulated BASE jumping under the Aerial Delivery Rule, consistently alerting the general public of potential criminal penalties for BASE jumping without a permit. *See also Kisor v. Wilkie*, 588 U.S. 558, 579–80 (2019) (explaining that consistency over time supports the reasonableness of an agency interpretation). And Plaintiffs concede that even individuals who have never been charged under the Rule are aware of NPS's position and therefore must choose "between compliance and criminal liability." Compl. ¶ 120.

Because NPS has reasonably and consistently construed the Aerial Delivery Rule to apply to BASE jumping, it is not unconstitutionally vague. The Court should dismiss this claim pursuant to Rule 12(b)(6).

## VI.    CONCLUSION

For all these reasons, the Court should dismiss Plaintiffs' entire complaint under Rule 12(b)(1) for lack of standing or Rule 12(b)(3) for improper venue. If the Court does

not dismiss the entire Complaint, the Court should alternatively dismiss Counts One and Two under Rule 12(b)(6).

Respectfully submitted this 12th day of June, 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources Division

/s/ *Jeffrey N. Candrian*
JEFFREY N. CANDRIAN
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
999 18th St., North Terrace, Suite 600
Denver, Colorado 80202
Ph: 303-844-1382
Email: Jeffrey.candrian@usdoj.gov
CO Bar No. 43839
*Pro Hac Vice motion filed and pending

DANIEL LUECKE
Trial Attorney
Natural Resources Section
Environmental and Natural Resources Division
United States Department of Justice
150 M St. NE
Washington, D.C. 20002
Ph: 202-353-1389 (office)
Email: daniel.luecke@usdoj.gov
CA Bar No. 326695
*Pro Hac Vice motion filed and pending

*Attorneys for Defendants*

Defendants' Motion to Dismiss 18

## <u>CERTIFICATE OF WORD COUNT</u>

I hereby certify that the above motion is under 5,000 words, not including the case caption, table of contents, table of authorities, signature block, and certificates.


<u>/s/ *Jeffrey N. Candrian*          </u>
Jeffrey N. Candrian