## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| BASE ACCESS, et al., | |
| *Plaintiffs*, | |
| v. | Case No.  4:25-cv-790 |
| NATIONAL PARK SERVICE, et al., | |
| *Defendants*. | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... i

TABLE OF AUTHORITIES ................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................ 1

LEGAL STANDARDS .......................................................................................... 2

ARGUMENT ......................................................................................................... 2

   I.  PLAINTIFFS HAVE STANDING .................................................................. 2

     A.  Plaintiffs' Injuries Are Actual and Imminent ................................... 2

     B.  Plaintiffs' Injuries Can Be Redressed by This Court .......................... 5

   II.  VENUE IS PROPER IN THE SOUTHERN DISTRICT OF TEXAS ..................... 8

   III. COUNTS ONE AND TWO STATE VALID CLAIMS FOR RELIEF .................. 8

     A.  The Organic Act Fails to Provide an Intelligible Principle ............... 8

     B.  The Organic Act, in Conjunction with 18 U.S.C. § 1865(a), and the Aerial Delivery Rule Are Impermissibly Vague .......................... 15

        1.  *The Organic Act, in conjunction with 18 U.S.C. § 1865(a), is impermissibly vague* ..................................................... 15

        2.  *The Aerial Delivery Rule is also impermissibly vague* .............. 16

CONCLUSION ..................................................................................................... 19

CERTIFICATE OF WORD COUNT .................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
 295 U.S. 495 (1935) ................................................................................................ 11, 12

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...................................................................................................... 2

*Babbitt v. United Farm Workers*,
 442 U.S. 289 (1979) ...................................................................................................... 3

*Big Time Vapes, Inc. v. FDA*,
 963 F.3d 436 (5th Cir. 2020) ...................................................................................... 11

*Bowles v. Seminole Rock & Sand Co.*,
 325 U.S. 410 (1945) .................................................................................................... 17

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*,
 240 F. App'x 612 (5th Cir. 2007) ................................................................................. 2

*City of Chicago v. Morales*,
 527 U.S. 41 (1999) ...................................................................................................... 16

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ...................................................................................................... 5

*Deutsch v. Travis Cnty. Shoe Hosp., Inc.*,
 721 F. App'x 336 (5th Cir. 2018) ................................................................................. 5

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
 695 F.3d 330 (5th Cir. 2012) ....................................................................................... 5

*Jarkesy v. SEC*,
 34 F.4th 446 (5th Cir. 2022) ....................................................................................... 11

*Johnson v. United States*,
 576 U.S. 591 (2015) .................................................................................................... 19

*Kisor v. Wilkie*,
 588 U.S. 558 (2019) .................................................................................................... 18

*Kolender v. Lawson*,
 461 U.S. 352 (1983) .................................................................................................... 16

*Kordel v. United States*,
 335 U.S. 345 (1948) .................................................................................................... 19

*Louisiana v. Biden*,
 64 F.4th 674 (5th Cir. 2023) ......................................................................................... 5

*Lujan v. Defs. of Wildlife*,
     504 U.S. 555 (1992)........................................................................4-5

*Malik v. U.S. Dept. of Homeland Sec.*,
     619 F.Supp.3d 652 (N.D. Tex. 2022) ............................................ 5

*Nat'l Wildlife Fed'n v. Nat'l Park Serv.*,
     669 F. Supp. 384 (D. Wyo. 1987).................................................. 10

*Noem v. Haaland*,
     41 F.4th 1013 (8th Cir. 2022) ...................................................... 7

*Panama Refining Co. v. United States*,
     293 U.S. 388 (1935).................................................................... 12

*Papachristou v. City of Jacksonville*,
     405 U.S. 156 (1972).................................................................... 19

*Roark & Hardee LP v. City of Austin*,
     522 F.3d 533 (5th Cir. 2008) .................................................... 4, 6

*S. Utah Wilderness All. v. Dabney*,
     222 F.3d 819 (10th Cir. 2000) .................................................... 10

*Sessions v. Dimaya*,
     584 U.S. 148 (2018).................................................................... 15

*Sierra Club v. Andrus*,
     487 F. Supp. 443 (D.D.C. 1980).................................................. 10

*Smith v. Goguen*,
     415 U.S. 566 (1974).................................................................... 16

*Spokeo, Inc. v. Robins*,
     578 U.S. 330 (2016)...................................................................... 2

*Steffel v. Thompson*,
     415 U.S. 452 (1974)...................................................................... 3

*Turtle Island Foods, SPC v. Strain*,
     65 F.4th 211 (5th Cir. 2023) ........................................................ 4

*United States v. Albers*,
     226 F.3d 989 (9th Cir. 2000) ...................................................... 17

*United States v. Campos-Serrano*,
     404 U.S. 293 (1971).................................................................... 19

*United States v. Grimaud*,
     220 U.S. 506 (1911)................................................................ 13, 14

*United States v. Pheasant*,
     129 F.4th 576 (9th Cir. 2025) .................................................. 14, 15

*Woodlands Pride, Inc. v. Paxton*,
694 F.Supp.3d 820 (S.D. Tex. 2023) ................................................................. 4

*Yakus v. United States*,
321 U.S. 414 (1944) ......................................................................................... 9, 10

**Statutes**

18 U.S.C. § 1865 .............................................................................................. 2, 3, 8

28 U.S.C. § 1391 ................................................................................................ 2, 11

54 U.S.C. § 100101 ............................................................................................ 2, 13

54 U.S.C. § 100751 ................................................................................... 2, 8, 14, 18

**Regulations**

36 C.F.R. § 2.17 ............................................................................................ 3, 8, 22

## SUMMARY OF ARGUMENT

First, Plaintiffs have Article III standing to challenge the prohibition on BASE jumping in national parks. Each Plaintiff (as well as Plaintiff BASE Access's members) is an active, highly trained BASE jumper who *currently* seeks to lawfully BASE jump in our national parks—not "some day," but as soon as it can be done legally. *See* Ex. A (Cowser Declaration). Plaintiffs' intentions to BASE jump in the national parks as soon as circumstances allow are concrete—a far cry from the "amorphous," *"some day"* intentions that Defendants describe.

Second, Plaintiff Jedd Cowser resides in the Southern District of Texas, and thus venue is proper in this District. *See* 28 U.S.C. § 1391(e)(1)(C). Defendants' contention that venue is improper rests entirely on their argument that all Plaintiffs lack standing. As detailed herein, all Plaintiffs, including Mr. Cowser, have standing.

Third, the Organic Act, in conjunction with 18 U.S.C. § 1865(a), violates the nondelegation doctrine, as it does not provide any intelligible principle to meaningfully guide or limit Defendants' authority to enact criminal laws. The Organic Act merely authorizes the Secretary to issue regulations that he "considers necessary or proper," and broadly gestures at the dual aspirations to "conserve" and "provide for [the public's] enjoyment"—neither of which meaningfully constrains discretion. 54 U.S.C. § 100101(a).

Fourth, the Organic Act, in conjunction with 18 U.S.C. § 1865(a), is impermissibly vague because it fails to define what conduct is criminal, provides no clear guidelines for enforcement, and criminalizes whatever conduct Defendants deem "necessary or proper" to forbid, thus inviting arbitrary enforcement.

Fifth, the Aerial Delivery Rule is unconstitutionally vague as applied to BASE jumping, as it fails to provide fair notice of the conduct that it punishes (namely, BASE jumping).

## LEGAL STANDARDS

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

When addressing a Rule 12(b)(3) motion for improper venue, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

### I.    PLAINTIFFS HAVE STANDING

#### A.  Plaintiffs' Injuries Are Actual and Imminent

Plaintiffs satisfy Article III's injury requirement, as each Plaintiff faces an actual, imminent threat of harm from NPS's criminal enforcement of the Aerial Delivery Rule against BASE jumpers, and, further, suffers ongoing harm from a policy that prevents Plaintiffs from jumping.  To establish an injury-in-fact, a plaintiff who challenges a statute

"must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers*, 442 U.S. 289, 298 (1979). When challenging a criminal law, "it is not necessary that [the plaintiff] first expose himself to actual arrest or prosecution." *Id*.; *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) (standing to challenge criminal law where arrest of plaintiff's companion under the law was "ample demonstration" that plaintiff's concern with arrest was not "chimerical").

Defendants contend that, because the Complaint does not specify exactly when and in which specific national park unit each Plaintiff next intends to BASE jump, Plaintiffs fail to demonstrate "a realistic danger of sustaining a direct injury [from the regulation's] enforcement." ECF 19 at 7. However, Article III does not require that plaintiffs disclose precisely when and where they intend to break the law, thus exposing themselves to the risk of criminal prosecution. *See Babbitt*, 442 U.S. at 298. There is nothing "hypothetical" about Plaintiffs' active engagement in BASE jumping and firm intention to BASE jump in the national parks *as soon as it is legally permissible*. *See* Ex. A; Compl. ¶¶ 14-23. It is only NPS's enforcement of the Aerial Delivery Rule prevents Plaintiffs from lawfully BASE jumping in the national parks.

A party has standing when it has faced prosecution under a criminal ordinance in the past and faces the real possibility of prosecution in the future. *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 543 (5th Cir. 2008). Even where plaintiffs have not yet been exposed to a prior arrest or prosecution, courts find injury-in-fact where a plaintiff is clearly subject to a challenged law's reach. *See Turtle Island Foods, SPC v. Strain*, 65 F.4th 211,

218 (5th Cir. 2023); *see also Woodlands Pride, Inc. v. Paxton*, 694 F.Supp.3d 820, 839 (S.D. Tex. 2023).

In *Roark*, bar owners brought a pre-enforcement challenge to a smoking-ban ordinance. The city argued that the plaintiffs lacked standing because they had not yet incurred fines or penalties. The Fifth Circuit disagreed, as the plaintiffs were among the class that the ordinance regulated, and the city had not disavowed its intent to enforce the ordinance against them. *Roark*, 522 F.3d at 543.

If standing was appropriate in those cases, it is all the more warranted here. Several Plaintiffs, including Mr. Kempf as recently as last year, have already been criminally penalized by NPS for BASE jumping in national parks. *See* Compl. ¶¶ 18, 20, 23. All Plaintiffs fall squarely within the class that NPS targets via the Aerial Delivery Rule, and the agency has never disavowed its intent to continue criminally prosecuting BASE jumpers.

Defendants' cases are legally inapposite and factually distinguishable. For instance, in *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), the alleged injury arose from the regulation of a party outside the litigation—a circumstance in which it is "substantially more difficult" to establish standing. *Id*. at 562. The Supreme Court found that the plaintiffs failed to show how *possible* harm to a threatened animal species would produce "imminent" injury to the *plaintiffs*, who were neither regulated nor directly affected by the regulation. *Id*. at 564. Here, Plaintiffs are directly subject to the challenged regulatory regime and face a credible threat of prosecution should they BASE jump in the national parks.

Defendants' other cases are equally distinguishable.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 n.5 (2013) (no standing where alleged injury "relie[d] on a highly attenuated chain of possibilities"); *Louisiana v. Biden*, 64 F.4th 674, 677-78 (5th Cir. 2023) (no standing where alleged injury relied entirely on "chain of hypotheticals"); *Deutsch v. Travis Cnty. Shoe Hosp., Inc.*, 721 F. App'x 336, 340 (5th Cir. 2018) (no standing where plaintiff bringing ADA claim against shoe store had never been to store prior to day of purported violations; had no plans to return to store; and could not show how he was negatively impacted); *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 342-43 (5th Cir. 2012) (no standing where plaintiffs, who alleged they were injured by overpriced caskets, could simply purchase cheaper caskets from other manufacturers); *Malik v. U.S. Dept. of Homeland Sec.*, 619 F.Supp.3d 652, 657 n.3 (N.D. Tex. 2022) (no standing where requested declaratory relief related solely to past harm).

Plaintiffs do not rely on speculative fears or attenuated chains of events—and they have alleged both ongoing (blanket ban on BASE jumping in the safest, most ideal locations in the country) and imminent (risk of criminal prosecution and penalties) harm. They seek to engage in conduct—BASE jumping—that NPS explicitly prohibits and targets for criminal enforcement.  That is sufficient to establish Article III standing.

### B.  Plaintiffs' Injuries Can Be Redressed by This Court

Plaintiffs' requested relief would redress Plaintiffs' injuries.  Defendants' arguments to the contrary mischaracterize both the scope of Plaintiffs' challenge and the practical effect of the requested relief.

Plaintiffs challenge three mutually reinforcing legal provisions that, together, cause their injuries: (1) the Organic Act's unconstitutional delegation of lawmaking authority, 54 U.S.C. § 100751; (2) the criminal enforcement statute, 18 U.S.C. § 1865(a); and (3) the Aerial Delivery Rule.  Should Plaintiffs prevail, BASE jumping in the national parks will no longer qualify as a criminal offense, and Plaintiffs will no longer face criminal penalties for engaging in an otherwise lawful recreational activity.  To be clear, Plaintiffs are not asking this Court to decree that BASE jumping must be affirmatively permitted, or that they have a right to jump wherever, whenever they desire.  Rather, Plaintiffs seek to eliminate the unconstitutional and arbitrary blanket ban on BASE jumping, thereby allowing Plaintiffs to proceed on equal footing with other park recreationalists, subject only to *lawful* regulation.

Today, if Plaintiffs were caught BASE jumping in a national park, they would face arrest and prosecution under 36 C.F.R. § 2.17(a)(3), which stems directly from the Organic Act's unconstitutional delegation of criminal lawmaking authority.  If those provisions are invalidated and NPS's criminal enforcement authority curtailed, Plaintiffs would no longer be subject to unconstitutional criminal penalties.  *See Roark*, 522 F.3d at 544.

Defendants' reliance on *Noem v. Haaland*, 41 F.4th 1013 (8th Cir. 2022), is misplaced.  There, South Dakota sought to compel NPS to grant a permit for a Fourth of July fireworks display over Mount Rushmore.  The Eighth Circuit reasoned that eliminating NPS's permitting regime would not redress the State's claimed injury—being denied permission—because it would eliminate the very mechanism by which permission could be granted.  "With no substitute, doing away with this [permit] process [would] only

make it *harder*, not easier, for South Dakota to remedy its claimed injury." *Id*. at 1018. The Eighth Circuit distinguished the relief requested by South Dakota from "nondelegation cases [where] an agency is already regulating the party who sues," explaining that "a favorable decision on a nondelegation challenge" in *those* types of cases would "remove the obstacle," and thus the injury would "likely" be redressable. *Id*. at 1017. The court emphasized that its ruling was "limited based on how South Dakota [] characterized its own injury," and left open "the possibility that some other type of injury … would change the redressability analysis." *Id*. at 1018 & n.1.

Here, by contrast, Plaintiffs challenge a regime that affirmatively criminalizes their conduct—BASE jumping—through a vague prohibition enforced under threat of arrest and prosecution. Unlike *Noem*, Plaintiffs are regulated parties who seek to "remove the obstacle" causing their injuries. If the Aerial Delivery Rule is invalidated as unconstitutionally vague (or the Organic Act deemed an invalid source of authority for such regulation), then the sole mechanism by which NPS prohibits and criminalizes BASE jumping will fall away—directly redressing Plaintiffs' injuries. Plaintiffs seek relief from a criminal prohibition and penalties that they face only because of the challenged delegation and regulation.

Defendants contend that NPS could bar BASE jumping even without the Aerial Delivery Rule, likening its authority to that of a private landowner. ECF 19 at 9. But while the Government, like any proprietor, may enforce property norms such as trespass or nuisance, a proprietor does not have the right to dictate what conduct on his property qualifies as criminal conduct punishable by criminal sanctions. Unlike cases in which the

government-proprietor seeks to enforce typical proprietor rights over its land, this case concerns NPS's attempt to criminalize conduct without meaningful guidance from Congress.  That is not a right that proprietors wield over their land, nor is it a power that executive agencies may wield over American citizens under our constitutional order.

## II.    VENUE IS PROPER IN THE SOUTHERN DISTRICT OF TEXAS

Plaintiff Jedd Cowser resides in the Southern District of Texas, and thus venue is proper in this District.  *See* 28 U.S.C. § 1391(e)(1)(C).  Defendants' contention that venue is improper rests entirely on their argument that all Plaintiffs lack standing.  If Defendants believe that Mr. Cowser uniquely lacks standing in some manner that the other Plaintiffs do not, Defendants do not explain why and make no argument specific to Mr. Cowser.  As detailed herein, *supra* § I, all Plaintiffs, including Mr. Cowser (*see* Ex. A), have standing. Accordingly, venue is proper and should remain in this District.

## III.    COUNTS ONE AND TWO STATE VALID CLAIMS FOR RELIEF

### A.  The Organic Act Fails to Provide an Intelligible Principle

The Organic Act, in conjunction with 18 U.S.C. § 1865(a), unconstitutionally delegates legislative power, effectively granting Defendants unfettered criminal lawmaking authority—untethered by any meaningful limitations and unguided by any "intelligible principle."

To be sure, Congress may confer a certain level of discretion on executive agencies to implement and enforce laws—but only within constitutionally prescribed limits.  The Supreme Court has underscored that Congress must do more than provide broad, aspirational goals—rather, it must provide clear guidance to meaningfully constrain an

agency's implementation of delegated authority, setting forth "standards" that are "sufficiently definite and precise to enable Congress, the courts and the public to ascertain whether the [agency] ... has conformed to those standards." *Yakus v. United States*, 321 U.S. 414, 426 (1944). Absent such legislative guardrails, the line between faithful execution and unauthorized lawmaking vanishes, leaving agencies free to inscribe their own policy preferences into the law.

Defendants contend that the Organic Act provides an intelligible principle by directing the Secretary to "promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units." 54 U.S.C. § 100101(a). That "fundamental purpose," the Act provides, "is to conserve" park resources and "provide for the [public's] enjoyment" of those resources so as to "leave them unimpaired for … future generations." *Id.* This lofty bromide may introduce NPS's general mission, but it does not establish "standards" that are "sufficiently definite and precise to enable Congress, the courts and the public to ascertain" whether NPS's actions "conform[]" to that mission. *Yakus*, 321 U.S. at 426.

 "[N]owhere ... is there a specific direction as to how the protection of Park resources and their federal administration is to be effected." *Sierra Club v. Andrus*, 487 F. Supp. 443, 448 (D.D.C. 1980). Indeed, it is "unclear from the statute itself what constitutes impairment, and how both the duration and severity of the impairment are to be evaluated or weighed against the other value of public use of the park." *S. Utah Wilderness All. v. Dabney*, 222 F.3d 819, 826 (10th Cir. 2000). "[T]he Organic Act is silent as to how the

protection of park resources and their administration are to be effected." *Nat'l Wildlife Fed'n v. Nat'l Park Serv.*, 669 F. Supp. 384, 391 (D. Wyo. 1987).

The breadth of this discretion is amplified by the Act's sweeping grant of authority to the Secretary to promulgate any regulation he deems "necessary or proper for the use and management of [the] System." 54 U.S.C. § 100751(a). Far from providing an intelligible principle, this "necessary *or* proper" standard invites unbounded discretion. While "necessary" provides some degree of limitation, the addition of "or proper" strips the phrase of any limiting force. What might be "proper"—*i.e.*, "suitable" or "appropriate"—is an entirely subjective determination that varies with the policymaker's preferences. The Act is thus not "sufficiently definite to enable ... courts and the public to ascertain whether [NPS]" is operating pursuant to any objective "standards." *Yakus*, 321 U.S. at 426. Indeed, Congress's delegation of "necessary or proper" authority is broader even than the Constitution's delegation of authority to Congress to make Laws that are "necessary *and* proper." U.S. Const. Art. I, sec. viii.

Defendants point out that the Supreme Court has only twice found—in *Schechter Poultry* and *Panama Refining*—that a statute lacked an "intelligible principle." But Supreme Court precedent is binding no matter the frequency of its application. Courts must not "shy away from [their] judicial duty to invalidate unconstitutional delegations." *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 443 (5th Cir. 2020) (courts must not "rubber-stamp all delegations of legislative power."). Indeed, the Fifth Circuit recently determined that Congress unconstitutionally delegated to the SEC "exclusive authority and absolute discretion" to choose whether to bring enforcement actions in federal courts or

10

administrative proceedings, finding "Congress ha[d] said nothing at all indicating how the SEC should make that call in any given case." *Jarkesy v. SEC*, 34 F.4th 446, 462-63 (5th Cir. 2022). Because "a total absence of guidance is impermissible under the Constitution," the delegation lacked an intelligible principle. *Id.*

In *Schechter Poultry*, the Supreme Court held that the NIRA's authorization of the President to prescribe "codes of fair competition" that, "in his discretion," he deemed "necessary" was an unconstitutional delegation of legislative power. 295 U.S. at 534, 542. The statute's code-making provision amounted to the "coercive exercise of the lawmaking power" because the codes of fair competition placed "all persons within their reach under the obligation of positive law" and subjected them to criminal penalties for any violation. *Id.* at 529. The Court rejected the Government's argument that the Act's "Declaration of Policy," which listed a "broad range of objectives," qualified as meaningful congressional guidance. *Id.* at 534. Given the absence of any meaningful directions or limitations, the statute's supposed limiting instruction—that any code must "tend to effectuate the policy of this title"—was "really but a statement of an opinion as to the general effect upon the promotion of trade and industry" of the provision. *Id.* at 538. The Act "supplie[d] no standards," "aside from the statement of the general aims" described in the Declaration of Policy. *Id.* at 541. "In view of the scope of that broad declaration and of the nature of the few restrictions that are imposed," the statute conferred on the President "virtually unfettered" authority to enact laws governing trade, rendering the delegation unconstitutional. *Id.* at 541-42.

In *Panama Refining*, the Court invalidated another provision of the NIRA, which authorized the President to criminalize the interstate transportation of petroleum produced in excess of state limits. 293 U.S. at 405-06. The Court concluded that the provision's long list of policy objectives served as nothing more than a "broad outline" containing "nothing as to the circumstances or conditions in which transportation of petroleum…should be prohibited." *Id.* at 417-18 ("The section also speaks in general terms of the conservation of natural resources, but it prescribes no policy for the achievement of that end."). To uphold the delegation, bounded only by a "broad outline" of objectives, would be to "invest [the President] with an uncontrolled legislative power." *Id.* at 432.

The Organic Act suffers from the same fatal defects. Much like the NIRA provisions struck down in *Schechter Poultry* and *Panama Refining*, the Act supplies nothing beyond a "broad outline" of aspirational policy objectives to guide NPS's exercise of criminal lawmaking power. The Act's sweeping mandate to prescribe law that Defendants deem "necessary or proper" in a manner that will "conserve the scenery, natural and historic objects and the wild life therein" and "provide for the enjoyment" of visitors is no more meaningful a standard than the broad declarations of policy in *Schechter Poultry* and *Panama Refining*. Binding precedent dictates that that kind of standardless delegation is unconstitutional.

Notwithstanding Defendants' argument to the contrary, the Supreme Court's ruling in *United States v. Grimaud*, 220 U.S. 506 (1911) cannot salvage the Organic Act's sweeping, standardless delegation of criminal lawmaking authority. In *Grimaud*, the Supreme Court upheld Congress's delegation of authority to the Secretary of Agriculture

to promulgate a criminal regulation prohibiting the unauthorized grazing of livestock on national forest reservations. That delegation, however, is distinguishable from the Organic Act's unfettered delegation of authority to Defendants to prescribe law deemed "necessary or proper" to "conserve" and "provide for the enjoyment" of national parks. In *Grimaud*, Congress had established the reservations to protect the forests from destruction, and, to ensure that the statute was carried into effect, Congress authorized the Secretary to issue regulations to "protect[] against destruction by fire and depredations upon the public forests and forest reservations" and to "preserve the forests thereon from destruction." *Id.* at 509. The Supreme Court concluded that Congress had not delegated authority to make "rules and regulations for any and every purpose" (which would have been unconstitutional), but instead had authorized the Secretary only to "fill up the details" necessary to administer the law within clearly defined parameters. *Id.* at 517-22. The key principle in *Grimaud* was that Congress made the fundamental policy decisions and then provided clear guidance for the executive's enforcement of that policy. *Id.* at 522. The Secretary's authority was limited and tethered to "defined" subjects, which were "clearly indicated and authorized by Congress." *Id.* By contrast, the Organic Act offers no meaningful limitations on the Secretary's vague and capacious authority to issue any criminal regulations he deems "necessary or proper for the use and management" of the national parks. 54 U.S.C. § 100751(a).

Further, to the extent Defendants suggest that *United States v. Yazzie*, *United States v. Nieves*, and *United States v. Brown* foreclose Plaintiffs' nondelegation claim, ECF 19 at 13-14, they are mistaken. Those out-of-circuit decisions are not binding on this Court and

unpersuasive for the reasons detailed above.  None of them seriously grapple with the scope of unchecked legislative power conferred by the Organic Act, nor do they resolve the constitutional defects Plaintiffs challenge here.

Defendants also invoke the Ninth Circuit's recent decision in *United States v. Pheasant*[1] as supposed support for the constitutionality of the Organic Act's delegation—but *Pheasant* offers no such endorsement.   There, the challenged regulation was promulgated under the FLPMA, which provides significantly more guidance—and less discretion—to direct agency action than the Organic Act.  FLPMA requires the Secretary to issue only those regulations "necessary"—as opposed to the Organic Act's broader "necessary *or* proper—to implement FLPMA's provisions concerning "the management, use, and protection of the public lands."  *United States v. Pheasant*, 129 F.4th 576, 580 (9th Cir. 2025).   The Act expressly limits the Secretary's discretion by mandating adherence to the statute's core principles: managing public lands for "multiple use and sustained yield," which requires utilizing "public lands and their various resource values"—*e.g.*, "recreation, range, timber, minerals, watershed, wildlife and fish, and natural scenic, scientific and historical values"—in a manner that takes into account "the relative values of the resources" and avoids "permanent impairment of the productivity of the land and the quality of the environment," controlling depleting land uses to ensure "maintenance in perpetuity of a high-level annual or regular periodic output of the various

---

[1] On June 3, 2025, Appellees petitioned for panel rehearing or rehearing en banc.  The Ninth Circuit has ordered the Government to respond to Appellees' petition by July 16, 2025.

renewable resources," and preventing "unnecessary or undue degradations of the lands." *Id.* The Ninth Circuit determined that this framework "set out a clear principle" and thus satisfied the intelligible principle test. *Id.* at 580-81. By contrast, the Organic Act supplies no concrete guidance or limiting standards beyond broad aspirational goals to constrain the Defendants' authority.

**B. The Organic Act, in Conjunction with 18 U.S.C. § 1865(a), and the Aerial Delivery Rule Are Impermissibly Vague**

   *1. The Organic Act, in conjunction with 18 U.S.C. § 1865(a), is impermissibly vague*

Section 100751(c) and 18 U.S.C. § 1865(a)—the statutory provisions that authorize criminal penalties for violations of regulations that NPS deems "necessary or proper"—are unconstitutionally vague in violation of the Fifth Amendment's guarantee of due process. The vagueness doctrine "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions" of those who enforce the law. *Sessions v. Dimaya*, 584 U.S. 148, 156 (2018). Indeed, the "most meaningful aspect of the vagueness doctrine" is "the requirement that a legislature establish minimal guidelines to govern law enforcement" to prevent "arbitrary and discriminatory enforcement." *Smith v. Goguen*, 415 U.S. 566, 573-74 (1974). Where Congress fails to provide such minimal guidelines, a criminal law may permit "a standardless sweep [that] allows [enforcers] to pursue their personal predilections." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983).

The Organic Act permits just such a "standardless sweep," authorizing Defendants to criminalize conduct, in the agencies' unfettered discretion, by inventing "necessary or

proper" regulations that carry criminal penalties. Defendants insist that "[a]nyone of common intelligence" would know that violating NPS regulations could lead to criminal penalties. ECF 19 at 16. But that misses the point. Not only do neither the Organic Act nor 18 U.S.C. § 1865 provide advance notice of *what conduct is criminal*, the Act's vague, unbounded delegation of criminal lawmaking authority to Defendants invites arbitrary enforcement. *See supra* § III.A. The statutes merely warn that individuals must obey any and all regulations that Defendants opt to promulgate at some future point in time—or face criminal penalties. As the Supreme Court has made clear, a criminal law may be invalidated for vagueness "for *either* of two reasons": (1) failure to provide fair notice; and (2) the law may encourage "arbitrary and discriminatory enforcement. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). Congress has failed here on both fronts.

## 2. The Aerial Delivery Rule is also impermissibly vague

Even if a diligent individual were to parse the ever-proliferating volumes of the Code of Federal Regulations, she would still be left with zero notice that BASE jumping has been criminalized in the national parks. The Aerial Delivery Rule does not mention recreational activity at all—let alone BASE jumping. The rule prohibits "delivering or retrieving a person or object by parachute, helicopter, or other airborne means." 36 C.F.R. § 2.17(a)(3). Yet the regulation does not define "deliver," the ordinary meaning of which is to hand over or convey something from one person to another, *see* Compl. ¶ 159, as opposed to voluntarily moving one's body from spot in a park to another without conveying anything to anyone. The regulation thus fails to provide fair notice of the conduct it punishes (namely, BASE jumping).

16

Defendants rely on two out-of-circuit decisions—*United States v. Albers*, 226 F.3d 989 (9th Cir. 2000), and *United States v. Oxx*, 127 F.3d 1277 (10th Cir. 1997)—in defense of NPS's strained interpretation of the Aerial Delivery Rule, and particularly the term "delivery." But these decisions do little to salvage Defendants' position. In *Albers*, the Ninth Circuit expressly acknowledged that "the regulation of BASE jumping under § 2.17(a)(3) is not the most organic fit," upholding the agency's interpretation only because of "the deference owed to an agency's interpretation of its regulations." *Id*. at 994. Citing *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994), the court concluded that it must "give substantial deference" to NPS's inorganic view. *Albers*, 226 F.3d at 993. Notably, *Shalala* relied on *Bowles v. Seminole Rock & Sand Co.*—the genesis of what later became known as *Auer* deference, which, until recently, required courts to grant "controlling weight" to an agency's interpretation of its own regulations unless it was "plainly erroneous or inconsistent with the regulation." 325 U.S. 410, 414 (1945).

But the Supreme Court's ruling in *Kisor v. Wilkie*, 588 U.S. 558 (2019), significantly narrowed the scope of such reflexive deference, undermining any reliance on *Albers* or *Oxx*. The Court emphasized that the "possibility of deference can arise only if a regulation is *genuinely ambiguous*"—indeed, a regulation must remain "genuinely ambiguous, even after a court has resorted to all the standard tools of interpretation." *Id*. (emphasis added). And even then, "not all reasonable agency constructions of those truly ambiguous rules are entitled to deference." *Id*. Even if "genuine ambiguity remains," "the agency's reading must still be 'reasonable.'" *Id*. at 575. Yet the criminalization of BASE jumping via a regulation first promulgated prior to the aerial sport's existence, based on a

17

provision prohibiting the aerial "delivery or retrieval of a person or object" exceeds the bounds of reason.

*Kisor* also instructs courts not to defer to an agency's interpretation where such deference would "permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." *Id.* at 575. Yet by reinterpreting the Aerial Delivery Rule—a provision that nowhere references BASE jumping or any other form of recreation—NPS has done exactly that, concocting a de facto new regulation untethered from the plain text. *Id.*

In a last-ditch effort, Defendants contend that NPS's enforcement history of the Aerial Delivery Rule against BASE jumpers "for over four decades" somehow cures its constitutional defects. ECF 19 at 17. Not so. Defendants' argument turns the vagueness doctrine on its head. The core inquiry is not how often an agency has enforced a regulation in a particular way, but whether the text of the regulation itself provides fair notice of what conduct is prohibited. *United States v. Campos-Serrano*, 404 U.S. 293, 297 (1971) (criminal laws are "to be construed strictly," and one may not "be subjected to a penalty unless the words of the statute plainly impose it."); *see also Kordel v. United States,* 335 U.S. 345, 348-49 (1948) (a criminal law may not be read expansively to include what is not within its plain language). The fact that an agency has unconstitutionally enforced a vague law for decades does not somehow render the law constitutional. *Johnson v. United States*, 576 U.S. 591 (2015) (striking down provision of ACCA as unconstitutionally vague despite enforcement history spanning over thirty years).

18

Moreover, the vagueness doctrine is not limited to concerns about fair notice—it also serves as a critical safeguard against arbitrary and discriminatory enforcement. *See, e.g.*, *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972) (anti-vagrancy law void for vagueness where its lack of standards encouraged "arbitrary and discriminatory enforcement" by officials "against particular groups deemed to merit their displeasure."); *Morales*, 527 U.S. at 56. That NPS has, for decades, discriminatorily applied its vague construction of the Aerial Delivery Rule to criminalize BASE jumping does not cure the rule's vagueness; it merely underscores the longevity of an enduring constitutional infirmity that has long been in need of redress.

## CONCLUSION

Defendants' motion to dismiss fails on all grounds and should be denied.

DATED: July 3, 2025                    Respectfully submitted,

/s/ Casey Norman
Casey Norman
Litigation Counsel
New York Bar # 5772199
SDTX # 3845489
Casey.Norman@ncla.legal
Attorney-in-Charge

/s/ Kara Rollins
Kara Rollins*
Litigation Counsel
New York Bar # 5448147
Kara.Rollins@ncla.legal
* Pro Hac Vice

NEW CIVIL LIBERTIES ALLIANCE

19

4250 N. Fairfax Dr., Suite 300
Arlington, VA 22203
Telephone: (202) 869-5210

*Counsel for All Plaintiffs*


/s/ Adam Adler
Adam Adler*
New York Bar # 5470174
E-mail: aadler@reichmanjorgensen.com
* Pro Hac Vice Motion Forthcoming

REICHMAN JORGENSEN LEHMAN &
FELDBERG LLP
1909 K St., NW Suite 800
Washington, DC 20006
Telephone: (202) 894-7312

*Counsel for Plaintiff BASE Access*

## CERTIFICATE OF WORD COUNT

I hereby certify that the above response brief does not exceed 5,000 words, not including the case caption, table of contents, table of authorities, signature block and certificate.

/s/ Casey Norman
Casey Norman