**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

BASE ACCESS, et. al,

Plaintiffs,

v.

NATIONAL PARK SERVICE, et. al,

Defendants.

Case No. 4:25-cv-790

**REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs lack standing ..... 1

B. Plaintiffs' Nondelegation challenge fails because the Organic Act provides an intelligible principle. ..... 3

C. Neither the Organic Act nor the Aerial Delivery Rule is impermissibly vague. ..... 6

III. CONCLUSION ..... 8

## TABLE OF AUTHORITIES

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
295 U.S. 495 (1935) .......... 5, 6

*Big Time Vapes, Inc. v. FDA*,
963 F.3d 436 (5th Cir. 2020) .......... 5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 1

*FCC v. Consumers' Research*,
No. 24-354, 2025 WL 1773630 (June 27, 2025) .......... 4, 5

*Jarkesy v. SEC,*
34 F.4th 446 (5th Cir. 2022) .......... 4

*Johnson v. U.S.*,
576 U.S. 591 (2015) .......... 6

*Kisor v. Wilkie*,
588 U.S. 558 (2019) .......... 7, 8

*Kolender v. Lawson*,
461 U.S. 352 (1983) .......... 6

*Light v. United States*,
220 U.S. 523 (1911) .......... 3

*Mistretta v. U.S.*,
488 U.S. 361 (1989) .......... 5

*Noem v. Haaland*,
41 F.4th 1013 (8th Cir. 2022) .......... 2, 3

*Panama Refining Co. v. Ryan*,
293 U.S. 388 (1935) .......... 5, 6

*Paxton v. Dettelbach*,
105 F.4th 708 (5th Cir. 2024) .......... 2

*United States v. Albers*,
226 F.3d 989 (9th Cir. 2000) .......... 7, 8

*United States v. Kokinda*,
497 U.S. 720 (1990) .......... 3

*United States v. Oxx*,
127 F.3d 1277 (10th Cir. 1997) .......... 7, 8

*Yakus v. United States*,
321 U.S. 414 ........ 6

**Statutes**

18 U.S.C. § 1865(a) ........ 6
47 U.S.C. § 254(d)-(e) ........ 4
54 U.S.C. § 100101(a) ........ 4, 5
54 U.S.C. § 100501 ........ 5
54 U.S.C. § 100751(a) ........ 6
54 U.S.C.§ 100751 ........ 5

**Regulations**

36 C.F.R. § 2.1(a)(6) ........ 7
36 C.F.R. § 2.17(a)(3) ........ 7
36 C.F.R. §§ 1.1-7.100 ........ 7

# I. INTRODUCTION

Based on the face of the complaint and Plaintiffs' newly-submitted declaration, none of the Plaintiffs have demonstrated Article III standing. Their claimed injuries are neither concrete nor imminent, and their requested relief will not make BASE jumping lawful in national parks. The Court should dismiss the case because Plaintiffs lack standing and venue is improper.

Should the Court reach Counts One and Two, they fare no better. The Organic Act provides clear direction to NPS and limits its discretion, thus providing the required intelligible principle. And NPS's regulatory scheme, promulgated under the Organic Act, provides a person of common intelligence with notice that BASE jumping is prohibited under the Aerial Delivery Rule. The Court should dismiss these counts in the alternative.

# II. ARGUMENT

## A. Plaintiffs lack standing.

"Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Here, Plaintiffs request sweeping relief by asking the Court to declare that the Organic Act is unconstitutional and that NPS has no authority to deter and punish unlawful conduct within the National Park System. This would upend the National Park Service's ("NPS") management of 433 National Park System units, which cover more than 85 million acres in all 50 states.[1] Plaintiffs lack standing for such claims.

[1] *See* https://www.nps.gov/aboutus/national-park-system.htm (last visited July 7, 2025).

First, Plaintiffs have not articulated concrete plans to BASE jump in any national park in the future and thus do not face likely, imminent injury from prosecution. Plaintiffs' response and attached declaration insist that the mere deterrent effect of the Aerial Delivery Rule is enough to show standing, but this is not so. *See Paxton v. Dettelbach*, 105 F.4th 708, 712, 714 (5th Cir. 2024) (no standing where plaintiffs' declarations described "only a vague intention to make a silencer at some indeterminate point in the future" if the challenged law were invalidated, and did not state an intention to do so "*without applying for government approval*"). Nor do Plaintiffs explain why they have a "constitutional interest" in BASE jumping on government land, as required for standing in a pre-enforcement challenge. *Id.* at 711. Plaintiffs therefore fail to establish injury.

Second, Plaintiffs also have not shown redressability. Plaintiffs argue that if the Court invalidates the Organic Act and the Aerial Delivery Rule, "then the sole mechanism by which NPS prohibits and criminalizes BASE jumping will fall away—directly redressing Plaintiffs' injuries." Pls.' Resp. 7, Dkt. No. 23. That is wrong. If the Court grants Plaintiffs' relief, Plaintiffs will not be able to lawfully BASE jump in a national park. *See* Compl. ¶¶ 14-23, Dkt. No. 1. An obstacle remains, as Plaintiffs concede that they would still need permission from the United States. Resp. 7 (The United States "may enforce property norms such as trespass and nuisance . . . .").

In a failed attempt to distinguish *Noem v. Haaland*, 41 F.4th 1013, 1017–18 (8th Cir. 2022), Plaintiffs argue that they are the "regulated parties who seek to 'remove the obstacle' causing their injuries." Resp. 7 (quoting *Noem*, 41 F.4th at 1017). Plaintiffs

miss the point of *Noem*. There, the court explained that cases involving the Organic Act are different from ones in which an agency is regulating the party in an otherwise permissive setting: "A power plant wants to emit more chemicals, a pharmaceutical company hopes to release a new drug, or a firm wishes to merge with another. Yet some rule stands in the way." *Noem*, 41 F.4th at 1017. In those examples, invalidating the obstacle would allow the activity to occur and the injury to be redressed.

Here, like *Noem*, it is the opposite. Just as South Dakota would not automatically have "a right to shoot off fireworks" at a national park if the existing permitting process was invalidated, *id.* at 1018, Plaintiffs admit that they would not "have a right to jump wherever, whenever they desire" if the Court granted their requested relief, Resp. 6. With good reason, considering the federal government possesses the authority as landowner to "prohibit absolutely or fix the terms on which its property may be used." *Light v. United States*, 220 U.S. 523, 536 (1911); *see also United States v. Kokinda*, 497 U.S. 720, 725 (1990) ("[t]he Government's ownership of property does not automatically open that property to the public."). Plaintiffs do not meet their burden of establishing a substantial likelihood that their requested relief will allow them to lawfully BASE jump in a national park.

The Court should dismiss the complaint under Rule 12(b)(1) for lack of standing.

**B. Plaintiffs' Nondelegation challenge fails because the Organic Act provides an intelligible principle.**

In the rare circumstances where a nondelegation challenge succeeds, it is when Congress provides a "total absence of guidance." *Jarkesy v. SEC,* 34 F.4th 446, 462 (5th Cir. 2022). The Organic Act is not one of those statutes.

Two weeks ago, the Supreme Court reversed the Fifth Circuit and denied another nondelegation challenge. *FCC v. Consumers' Research*, No. 24-354, 2025 WL 1773630 (June 27, 2025). There, the statute directed the Federal Communication Commission ("FCC") to collect "sufficient" contributions from telecommunications carriers "to preserve and advance universal service." *Id*. at *5 (quoting 47 U.S.C. § 254(d)-(e)). The Court explained that it has long recognized that "Congress may vest discretion in executive agencies to implement and apply the laws it has enacted—for example, by deciding on the details of their execution." *Id*. at *8 (citation modified). Although the degree of Congressional guidance must be greater when an agency action "affect[s] the entire national economy," *id*. (citation omitted), the Court has "almost always found" an intelligible principle in nondelegation challenges. *Id*. The Court held that the contribution scheme fits this trend: Congress described a general policy, the standards the FCC must use to achieve that policy, and cabined the FCC's discretion. *Id*. at *19.

The Organic Act includes similar, clear guidance to NPS and delineates the boundaries of that authority. Although Plaintiffs pick and choose from the statute, Resp. 9, the Organic Act's express objective is to "conserve" the National Park System's "scenery, natural and historic objects, and wild life," and to "provide for the [public's] enjoyment" of those resources so as to "leave them unimpaired" for future generations. 54 U.S.C. § 100101(a). Congress directed the NPS to carry out this general policy, but

properly confined its authority geographically, *see* 54 U.S.C. § 100501, and programmatically. *Id.* at § 100101(a). Since NPS's regulations under the Organic Act do not affect the entire national economy, less guidance from Congress is necessary. The Organic Act easily satisfies the intelligible principle test, which is "not demanding." *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 442 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 2746 (2021).

Plaintiffs incorrectly argue that the Organic Act "invites unbounded discretion" because it instructs NPS to prescribe regulations that it deems "necessary or proper," rather than just "necessary." Resp. 10 (citing 54 U.S.C.§ 100751). Not so. The requirement that regulations be "necessary or proper" for the use and management of the National Park System is no less open-ended than the FCC being tasked to collect "sufficient" contributions in *Consumers' Research*. Nor is it distinguishable from the "host of [other] statutes giving agencies significant discretion" that the Supreme Court has deemed acceptable in nondelegation cases. *Consumers' Research*, 2025 WL 1773630, at *13 (collecting cases); *see also id.* at *9 (declining to cast doubt on statute that permits agency to collect fees as "necessary or appropriate"). Indeed, Supreme Court precedent does "not at all suggest that delegations . . . may not carry with them the need to exercise judgment on matters of policy." *Mistretta v. U.S.*, 488 U.S. 361, 378 (1989). Plaintiffs misapply this precedent when they argue that delegations cannot be broad or include policy judgments. Resp. 10.

Plaintiffs' reliance on *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) and *Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935) are unavailing. Resp.

11-12. In *Schechter*, Congress passed the National Industry Recovery Act ("NIRA") to stimulate a nationwide economic recovery. 295 U.S. at 536. However, the statute provided no standards and "prescribed no method of attaining that end." *Yakus v. United States*, 321 U.S. 414, 424 (analyzing *Schechter*). It gave the President "virtually unfettered" authority to govern the national economy. *Schechter*, 295 U.S. at 542. *Panama Refining* also concerned a provision of the NIRA that authorized the President to prohibit interstate petroleum transportation. 293 U.S. at 406-407. But the delegation contained "no policy, has established no standard, has laid down no rule . . . [and] no definition of circumstances and conditions in which the transportation is to be allowed or prohibited." *Id*. at 430. The Organic Act is nothing like these statutory provisions. Count One should be dismissed.

**C. Neither the Organic Act nor the Aerial Delivery Rule is impermissibly vague.**

A law is unconstitutionally vague if "it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. U.S.*, 576 U.S. 591, 595 (2015). The Organic Act expressly provides NPS with the authority to promulgate necessary or proper regulations for the management of National Park System units, 54 U.S.C. § 100751(a), and 18 U.S.C. § 1865(a) informs ordinary people that if you violate these regulations there will be criminal consequences. The important question is not whether there is "actual notice" of the law or regulation, but whether there are "minimal guidelines to govern law enforcement." *Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (citation omitted). Here there are. The regulatory scheme is

based on clear policy goals in the Organic Act, and enforcement is based on regulations that are not scattered around the federal code, as Plaintiff's incorrectly suggest, Resp. 16, but located in virtually one place: 36 C.F.R. §§ 1.1-7.100.

Plaintiffs contend that because the Aerial Delivery Rule does not expressly mention BASE jumping, it is impermissibly vague. Resp. 16, 18. This argument fails. By way of example, 36 C.F.R. § 2.1(a)(6) is a NPS regulation that prohibits "possessing, destroying, injuring, defacing, removing, digging, or disturbing a structure or its furnishing or fixtures, or other cultural or archeological resources." Under Plaintiffs' argument, because the regulation does not say it is illegal to graffiti an ancient petroglyph, the regulation provides "zero notice" that such conduct is prohibited in national parks. *See* Resp. 16. That is an absurd result. It is equally absurd to suggest, as Plaintiffs do, that the Aerial Delivery Rule's prohibition on "delivering . . . a person . . . by parachute," 36 C.F.R. § 2.17(a)(3), does not include activities like BASE jumping where a person "voluntarily" jumps from great heights and deploys a parachute. Resp. 16. Indeed, it is difficult to conceive of scenarios where a person would be *in*voluntarily delivered via parachute.

For over four decades, NPS has reasonably regulated BASE jumping under 36 C.F.R. § 2.17(a)(3). Two appellate courts have already rejected Plaintiffs' exact argument that the Aerial Delivery Rule is impermissibly vague as applied to BASE jumping. *See United States v. Albers*, 226 F.3d 989, 994 (9th Cir. 2000); *United States v. Oxx*, 127 F.3d 1277, 1279 (10th Cir. 1997). And, far from cutting against NPS's interpretation, *Kisor v. Wilkie*, 588 U.S. 558, 563 (2019), reinforces it by recognizing that an agency's

interpretation is more likely reasonable if it is consistent over time—exactly the situation here. *Id*. at 579. *Kisor* does not undermine *Oxx*, which explicitly held that the Rule is *un*ambiguous as applied to BASE jumping, 127 F.3d at 1279, or *Albers*, which adopted *Oxx's* determination. 226 F.3d at 994. The Court should dismiss Count Two.

## III. CONCLUSION

For these reasons and those in Defendants' opening brief, the Court should dismiss Plaintiffs' entire complaint under Rule 12(b)(1) or 12(b)(3). The Court should alternatively dismiss Counts One and Two under Rule 12(b)(6).

Respectfully submitted this 17th day of July, 2025.

ADAM R.F. GUSTAFSON
Acting Assistant Attorney General
Environment & Natural Resources
Division

/s/ *Jeffrey N. Candrian*
JEFFREY N. CANDRIAN
Trial Attorney
Natural Resources Section
Environment and Natural Resources
Division
U.S. Department of Justice
999 18th St., North Terrace, Suite 600
Denver, Colorado 80202
Ph: 303-844-1382
Email: Jeffrey.candrian@usdoj.gov
CO Bar No. 43839

DANIEL LUECKE
Trial Attorney
Natural Resources Section
Environmental and Natural Resources
Division

United States Department of Justice
150 M St. NE
Washington, D.C. 20002
Ph: 202-353-1389 (office)
Email: daniel.luecke@usdoj.gov
CA Bar No. 326695

*Attorneys for Defendants*

**CERTIFICATE OF WORD COUNT**

I hereby certify that the above Reply is under 2,000 words, not including the case caption, table of contents, table of authorities, signature block, and certificates.

/s/ *Jeffrey N. Candrian*
Jeffrey N. Candrian