United States District Court
Southern District of Texas

**ENTERED**

March 26, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BASE ACCESS, *et al*, | § | CIVIL ACTION NUMBER |
| Plaintiffs, | § | 4:25-cv-00790 |
| | § | |
| | § | |
| versus | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| DOUG BURGUM, *et al*, | § | |
| Defendants. | § | |

**OPINION AND ORDER ON DISMISSAL**

BASE jumping is an "extreme sport in which a parachutist leaps from a fixed structure or natural feature and deploys a specially designed parachute to control descent." Dkt 1 at ¶50. *BASE* itself is an acronym for the categories of fixed objects from which one can jump, being buildings, antennas (such as radio towers), spans (such as bridges), and earth (such as cliffs). Id at ¶48.

Plaintiffs here include six BASE jumpers, along with an organization that "advocates for the responsible practice of BASE jumping," in part by seeking its decriminalization in the United States. Id at ¶¶14–23. On the one hand, they'd like to BASE jump in national parks, which they say are "the safest, most scenic places" for doing so. Id at ¶¶2, 4. On the other, the National Park Service prosecutes BASE jumping without a permit pursuant to what's known as *the Aerial Delivery Rule*. See 36 CFR §2.17(a)(3); see also Dkt 1 at ¶¶14, 68. So they'd risk criminal penalties by doing so.

Plaintiffs maintain that the criminalization of BASE jumping in national parks violates the Vesting Clause of Article I of the Constitution, the Fifth Amendment, and the Administrative Procedure Act. See Dkt 1 at ¶¶123–171. The merits of those claims won't be reached because

Plaintiff's asserted injuries aren't arguably of a constitutional dimension. Nor are they redressable by the requested relief. Simply put, even if Plaintiffs prevail in this lawsuit, the Government still has the right to prevent them from BASE jumping on its land.

The motion by the Government to dismiss this action for lack of standing is granted. Dkt 19. This action is dismissed without prejudice.

### 1. Background

Houston has its virtues, but topography isn't one of them. It is, in a word, flat. Public records indicate that the average elevation across the city is fifty-nine feet above sea level. The highest point near the downtown area stands approximately eighty feet above sea level and is known, with no apparent irony intended, as *The Heights.*

Houston also has many beautiful aspects to commend it. For example, stroll Hermann Park and Buffalo Bayou Park; stroll also, and golf, Memorial Park. Important and historic state and federal sites are also nearby. For example, visit the San Jacinto Monument (near La Porte), the Sam Houston Statue (outside Huntsville), and Johnson Space Center (in Clear Lake); compare The Astrodome (now closed, sadly). But there are no national parks here.

How is it, then, that a case about daredevil jumping from great elevations in national parks is pending in Houston federal court? Great question. But venue rules do allow it. See 28 USC §1391(e)(1) (providing for action against officer of United States and, if no real property is involved, in which plaintiff resides). In any event, it can be safely said that Houston itself has absolutely nothing at stake here.

### a. Statutory and regulatory framework

Plaintiffs challenge three legal provisions which, operating together, cause their purported injuries.

*First* is the Organic Act, which established the National Park Service within the Department of the Interior. It states in part:

> The Secretary [of the Interior], acting through the Director of the National Park Service, shall promote and regulate the use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

54 USC §100101(a). It further provides:

> The Secretary [of the Interior] shall prescribe such regulations as the Secretary considers necessary or proper for the use and management of System units.

54 USC §100751(a).

The Department of the Interior delegated much of its rulemaking authority under the Organic Act to the National Park Service itself. See Dkt 1 at ¶33, citing DOI Departmental Manual §1.1.

*Second* is the criminal enforcement statute, which criminalizes violations of the regulations prescribed under the Organic Act above. See 18 USC §1865(a). It states:

> A person that violates any regulation authorized by section 100751(a) of title 54 shall be imprisoned not more than 6 months, fined under this title, or both, and be adjudged to pay all cost of the proceedings.

*Third* is the Aerial Delivery Rule. See 36 CFR §2.17(a)(3). It prohibits:

> Delivering or retrieving a person or object by parachute, helicopter, or other airborne means, except in emergencies involving public safety or serious property loss, or

> pursuant to the terms and conditions of a permit.

The National Park Service applies the Aerial Delivery Rule to BASE jumping. Section 8.2.2.7 of NPS *Management Policies* (2006) states:

> Parachuting (or BASE jumping), whether from an aircraft, structure, or natural feature, is generally prohibited by 36 CFR 2.17(a)(3). However, if determined through a park planning process to be an appropriate activity, it may be allowed pursuant to the terms and conditions of a permit.

This means that BASE jumping in a national park is legal so long as performed with a permit. But before any such permit may be granted by a park superintendent, the National Park Service must first complete a planning process that determines whether BASE jumping is an appropriate activity in that park and, if so, how to manage it. Dkt 34 at 2–3 (supplemental brief); see also Dkt 19-1 at 3 (DOI internal guidance as to managing BASE jumping). Park superintendents have discretion as to whether to commence such planning processes. Dkt 19-1 at 3.

The only regularly permitted BASE jumping in the National Park System is the annual Bridge Day celebration in New River Gorge National Park in West Virginia, where BASE jumpers are permitted to jump from the New River Gorge Bridge on the third Saturday in October of each year. Dkt 1 at ¶47 n 23. Beyond that, it appears that no other national park has even undertaken the planning process to determine whether BASE jumping is appropriate or could be managed within its boundaries. See id at ¶113.

Plaintiffs also assert that, in practice, the National Park Service has "denied virtually all BASE jumping permit requests." Id at ¶47. Specifically here, Plaintiff BASE Access has submitted permit applications to many

4

parks managed by the National Park Service, and all have been denied. Id at ¶114.

### b.   This action

This action commenced in February 2025. Dkt 1. Plaintiffs include six individual BASE jumpers, being Jedd Cowser, Lisa DeMusis, Catherine Hansen, Ryan Kempf, Charley Kurlinkus, and Marshall Miller, as well as BASE Access, a non-profit organization that "advocates for the responsible practice of BASE jumping." Id at ¶¶14–23. Defendants are the National Park Service, Jessica Bowron (as the Acting Director of the NPS), Doug Burgum (as the Secretary of the DOI), and Pam Bondi (as the Attorney General), who will be referred to as *the Government*. Id at ¶¶24–26.

The complaint challenges the criminalization of BASE jumping in national parks, pursuant to the statutes and regulations set forth above. It states the following three counts:

- o *Count One at ¶¶123–136:* Violation of the Vesting Clause of Article I of the United States Constitution, upon assertion that the Organic Act, in conjunction with 18 USC §1865(a), unconstitutionally delegates legislative power to make criminal law to the National Park Service.
- o *Count Two at ¶¶137–148:* Violation of the Fifth Amendment, upon assertion that the Organic Act, in conjunction with 18 USC §1865(a) and the Aerial Delivery Rule, are impermissibly vague.
- o *Count Three at ¶¶149–171:* Violation of the Administrative Procedure Act, upon assertion that the interpretation and enforcement of the Aerial Delivery Rule by the National Park Service is arbitrary and capricious.

The complaint seeks as relief a declaration in accord with each count above, along with an order enjoining Defendants from attempting to impose criminal penalties

against BASE jumpers who violate the Aerial Delivery Rule. Id at 44.

### 2. Legal standard

Subject-matter jurisdiction is inherently a threshold matter. *Steel Co v Citizens for a Better Environment*, 523 US 83, 94–95 (1998), quoting *Mansfield, Coldwater & Lake Michigan Railway Co v Swan*, 111 US 379, 382 (1884). This is because federal courts are ones of limited jurisdiction. *Howery v Allstate Insurance Co*, 243 F3d 912, 916 (5th Cir 2001), citing *Kokkonen v Guardian Life Insurance Co of America*, 511 US 375, 377 (1994). A decision to hear a case that's beyond the subject-matter jurisdiction of a federal court isn't a "mere technical violation," but is instead "an unconstitutional usurpation" of power. Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 3522 (West 3d ed September 2025 update).

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of an action for lack of subject-matter jurisdiction. The Fifth Circuit recognizes that a motion under Rule 12(b)(1) can present two different types of challenges to subject-matter jurisdiction—one facial, the other factual. See *Paterson v Weinberger*, 644 F2d 521, 523 (5th Cir 1981); *Lee v Verizon Communications Inc*, 837 F3d 523, 533 (5th Cir 2016). In a *facial challenge*, the defendant argues simply that the allegations in the complaint are insufficient to support jurisdiction. The court on such motion must then look only at the operative complaint, with all allegations presumed to be true. See *Paterson*, 644 F2d at 523. In a *factual challenge*, the defendant submits evidence together with the argument contesting jurisdiction. The court then isn't limited to the facts pleaded in the complaint but instead has discretion to consider any evidence submitted by the parties, such as affidavits, testimony, and documents. Ibid; see also *Kasali v FBI*, 2017 WL 6343654 at *2 (SD Tex 2017). Discretion would then also exist to weigh any competing evidence based on credibility assessments.

6

*Williamson v Tucker*, 645 F2d 404, 413 (5th Cir 1981) (citation omitted).

Dismissal is appropriate "when the court lacks the statutory or constitutional power to adjudicate the claim." *In re Federal Emergency Management Agency Trailer Formaldehyde Products Liability Litigation*, 668 F3d 281, 286 (5th Cir 2012), quoting *Home Builders Association Inc v City of Madison*, 143 F3d 1006, 1010 (5th Cir 1998) (internal quotations omitted). The burden is on the party asserting jurisdiction to establish by a preponderance of the evidence that it is proper. *New Orleans & Gulf Coast Railway Co v Barrois*, 533 F3d 321, 327 (5th Cir 2008). Indeed, a presumption against subject matter jurisdiction exists that "must be rebutted by the party bringing an action to federal court." *Coury v Prot*, 85 F3d 244, 248 (5th Cir 1996).

Challenge under Rule 12(b)(1) extends to the standing of the plaintiff to assert a claim. *Moore v Bryant*, 853 F3d 245, 248 n 2 (5th Cir 2017). A plaintiff must establish standing because the United States Constitution vests power in the federal courts to adjudicate only "Cases" and "Controversies." Art III, § 2. The burden is squarely upon the party asserting a claim in federal court to establish Article III standing by showing that (i) he's suffered an injury in fact, (ii) the injury is fairly traceable to the challenged conduct, and (iii) the injury is likely be redressed by a favorable decision. *Lujan v Defenders of Wildlife*, 504 US 555, 560–61 (1992); *Spokeo Inc v Robins*, 578 US 330, 338 (2016), citing *FW/PBS, Inc v Dallas*, 493 US 215, 231 (1990). This means that the plaintiff must clearly allege facts at the pleading stage that demonstrate each criterion. *Spokeo*, 578 US at 338, quoting *Warth v Seldin*, 422 US 490, 518 (1975).

3. Analysis

To have standing to sue in federal court, a plaintiff must make three showings, being that (i) it has suffered an injury that is "concrete, particularized, and actual or imminent," (ii) the defendant likely caused the injury; and (iii) the requested judicial relief would likely redress the

injury. *Wang v Paxton*, 161 F4th 357, 359 (5th Cir 2025), citing *TransUnion LLC v Ramirez*, 594 US 413, 423 (2021).

Causation can be assumed for present purposes. Squarely at issue are injury and redressability. Neither is clearly shown here.

### a. Injury in fact

Plaintiffs bring this action as a pre-enforcement challenge to a federal statute and its implementing regulations. The Fifth Circuit holds that the injury-in-fact requirement in such context "is satisfied where the plaintiff shows a serious 'intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Paxton v Dettelbach*, 105 F4th 708, 711 (5th Cir 2024), quoting *Susan B. Anthony List v Driehaus*, 573 US 149, 159 (2014); see also *Wang v Paxton*, 161 F4th at 359.

In some pre-enforcement cases, this element is easily met. This is particularly true when involving, for instance, the rights to free speech or to keep and bear arms under the First and Second Amendments, respectively. See *Speech First, Incorporated v Fenves*, 979 F3d 319, 331 (5th Cir 2020) (political speech); *National Rifle Association of America, Inc v McCraw*, 719 F3d 338, 345 (carrying handgun). Sometimes it's less obvious, but it can still be viewed as arguably met. For example, in *Sturgeon v Masica*, the plaintiff's intention to use his hovercraft for moose-hunting in a national park "arguably implicate[d] his right under the Privileges or Immunities Clause of the Fourteenth Amendment 'to use the navigable waters of the United States.'" 768 F3d 1066, 1072 (9th Cir 2014).

Plaintiffs here don't allege that their intended course of conduct—BASE jumping in national parks—is "arguably affected with a constitutional interest." See Dkt 23 (response). They instead heavily rely on *Roark & Hardee LP v City of Austin*, where the Fifth Circuit recognized standing to exist when a plaintiff "has faced prosecution under a criminal ordinance in the past and faces the real

possibility of prosecution in the future." 522 F3d 533, 543 (5th Cir 2008), citing *Reed v Giarrusso*, 462 F2d 706, 710–11 (5th Cir 1972). But *Roark & Hardee* doesn't sweep as broadly as assumed by Plaintiffs. Rather, the Supreme Court has consistently emphasized the *constitutional* nature of the conduct at issue when permitting pre-enforcement review.

In *Susan B. Anthony List*, the Supreme Court set out with clarity its modern pre-enforcement framework, used for "determining when the threatened enforcement of a law creates an Article III injury." 573 US at 158. Such test was first articulated in *Babbitt v United Farm Workers National Union*, 442 US 289, 298 (1979): "When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'"

*Susan B. Anthony List* highlighted several cases in which pre-enforcement review was found appropriate. Unlike here, the underlying course of conduct at issue in such cases was at least arguably of a constitutional dimension, particularly under the First Amendment. See *Steffel v Thompson*, 415 US 452, 459 (1974) (distributing handbills protesting American involvement in Vietnam War); *Babbitt*, 442 US at 301–02 (engaging in and intending to continue consumer publicity campaigns); *Holder v Humanitarian Law Project*, 561 US 1, 15 (2010) (seeking to provide advice and training to designated foreign terrorist organizations).

To read *Roark & Hardee* as suggested by Plaintiffs would effectively create a sweeping exception to the *Susan B. Anthony List* framework, while conferring standing—even absent any implicated constitutional interest—whenever a plaintiff has previously been prosecuted under a criminal ordinance and faces a realistic possibility of future prosecution. That isn't tenable and would unmoor *Roark & Hardee* from its facts, which arguably implicated

constitutional interests. The plaintiffs there were bar owners who challenged a city ordinance that banned smoking in enclosed public spaces. The ordinance, they said, was unconstitutionally vague, violated their First Amendment right to be free from compelled speech, and unreasonably interfered "in the operation of their businesses, a protected liberty interest." 522 F3d at 547–50. True, the Fifth Circuit ultimately concluded on the merits that such claims failed. But the bar owners had at least advanced colorable arguments of a constitutional dimension. By contrast here, Plaintiffs haven't identified any comparable constitutional interests applicable to BASE jumping.

Were it simply a question of whether a credible threat of prosecution exists under the pertinent statute and regulatory scheme at issue, injury could be assumed. Three Plaintiffs have previously been charged with violating the Aerial Delivery Rule for BASE jumping in Yosemite and Zion National Parks. Dkt 1 at ¶¶17–20, 22–23 (as to Catherine Hansen, Ryan Kempf, and Marshall Miller). And if anyone is going to BASE jump in national parks again, the individual Plaintiffs in this action certainly seem to be the ones who will do it. For example, Jedd Cower has been BASE jumping for 15 years, owns a wingsuit school, and seeks to both BASE jump and teach wingsuit jumping in national parks. Id at ¶15. Charley Kurlinkus has also himself "completed" approximately 3,200 BASE jumps—although he doesn't disclose how many of these, if any, occurred in national parks. Id at ¶21.

As the parties invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing in this action. *Texas v United States*, 50 F4th 498, 513 (5th Cir 2022). A credible threat of enforcement is only one element of Plaintiffs' necessary showing on injury in fact in this context. Beyond that, their briefing simply fails to demonstrate that their intended conduct is arguably affected with a constitutional interest.

Plaintiffs haven't sufficiently alleged an injury in fact to pursue pre-enforcement review. As such, they lack

standing to pursue this action. Regardless, standing even more plainly fails for lack of redressability, addressed next.

### b.   Redressability

A plaintiff in federal court must show "a 'substantial likelihood' that the requested relief will remedy the alleged injury in fact." *El Paso County v Trump*, 982 F3d 332, 341 (5th Cir 2020). This requires that it is likely, not merely speculative, that asserted injuries will be redressed by a favorable judicial decision. *Lujan*, 504 US at 561, citing *Simon v Eastern Kentucky Welfare Rights Organization,* 426 US 26, 38, 43 (1976).

As noted, Plaintiffs here seek to "lawfully BASE jump in the national parks." Dkt 1 at ¶¶15–23. In doing so, they specifically explain that they aren't requesting a "decree that BASE jumping must be affirmatively permitted, or that they have a right to jump wherever, whenever they desire." Dkt 23 at 11. Instead, they frame their challenge as only against the *criminal* element of the statutory and regulatory scheme at issue. Id at 11–12.

The problem with Plaintiff's theory is that their requested relief *will not* and *cannot* result in an order that secures their ability to lawfully BASE jump in national parks. This is so because, even if Plaintiffs prevailed on the merits, and the Organic Act and the Aerial Delivery Rule were wiped from the books as applied to BASE jumping, Plaintiffs *still* wouldn't be able to lawfully BASE jump in national parks. Why not? Because the national parks are government land, the use of which lies within government discretion.

The Eighth Circuit's decision in *Noem v Haaland* illustrates this point. 41 F4th 1013 (8th Cir 2022). South Dakota there sought to hold a Fourth of July fireworks show at Mount Rushmore, but the National Park Service denied the permit. Id at 1015. South Dakoka sued the National Park Service, in part on grounds that the permitting regime violated the nondelegation doctrine. Ibid. It sought a declaration that the statutes which granted the National Park Service "permitting authority

[were] unconstitutional for want of an intelligible principle." Id at 1016.

As to the nondelegation challenge, the Eighth Circuit stated, "Nobody has a right to shoot off fireworks on someone else's land." Id at 1018. As to redressability, it thus found it lacking because a favorable decision would not "remove the obstacle" preventing South Dakota from holding its fireworks show. Id at 1017. It also cited *Camfield v United States* for the proposition long ago that "the government has, with respect to its own lands, the rights of an ordinary proprietor, to maintain its possession and to prosecute trespassers." 167 US 518, 524 (1897) (cleaned up). The Eighth Circuit also determined that declaring the Organic Act unconstitutional would only make it more difficult for South Dakota to remedy its injury, as even the option of securing a permit would then become unavailable. 41 F4th at 1018.

All of that reasoning applies here. Plaintiffs want to lawfully BASE jump in national parks. But the Government can exclude people from its land or limit use of said lands. See *Light v United States*, 220 US 523, 536 (1911): "The United States can prohibit absolutely or fix the terms on which its property may be used." As such, even if the Organic Act and the Aerial Delivery Rule were invalidated, an obstacle nonetheless remains—Plaintiffs would still need government permission to lawfully BASE jump on its lands. Indeed, Plaintiffs admirably admit as much, stating that "the Government, like any proprietor, may enforce property norms such as trespass or nuisance." Dkt 23 at 12.

Attempts by Plaintiffs to distinguish *Noem v Haaland* are unavailing. Id at 11–12. They argue that this case "concerns NPS's attempt to criminalize conduct without meaningful guidance from Congress"—a question they say is distinct from "typical proprietor rights over its land." Id at 13. And they maintain that, if the Aerial Delivery Rule or the Organic Act were invalidated, "the sole mechanism by which NPS prohibits and criminalizes BASE jumping will fall away." Id at 12. But that's simply not true. Even if

the Aerial Delivery Rule goes away, Plaintiffs still can't lawfully BASE jump. Just as no one has a right to enter someone else's land to shoot off fireworks, no one has a right to enter another's land to jump off cliffs.

Plaintiffs' injuries aren't redressable by a favorable ruling here. As such, and again, they lack standing.

### 4. Conclusion

The motion by Defendants to dismiss this action for lack of standing is GRANTED. Dkt 19.

The claims against Defendants are DISMISSED WITHOUT PREJUDICE.

SO ORDERED.

Signed on March 26, 2026, at Houston, Texas.

_____

Honorable Charles Eskridge
United States District Judge

13